[No. 62785-1.　En Banc.　April 11, 1996.]

THE STATE OF WASHINGTON, *Petitioner*, v. ELIEZER
MORFIN CARDENAS, *Respondent*.

2

*Steven M. Lowe, Prosecuting Attorney*, and *Steve Cox, Deputy*, for petitioner.

*Carl G. Sonderman* and *Law Offices of Carl Sonderman*, for respondent.

PEKELIS, J.P.T.* — The State seeks review of a Court of Appeals decision reversing the trial court's imposition of

---

*Justice Rosselle Pekelis is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. IV, § 2(a) (amend. 38).

an exceptional sentence in a vehicular assault case. The Court of Appeals concluded that the factors of multiple and serious injuries, particular vulnerability of the victim, and particularly egregious conduct do not justify the exceptional sentence imposed. Although we agree with the Court of Appeals that the trial court improperly relied on the factors of multiple and serious injuries and egregious conduct, we hold that the factor of victim vulnerability was properly applied by the trial court in this case.

On November 17, 1992, Eliezer Cardenas pled guilty to vehicular assault and hit-and-run injury. Witnesses to the incident estimated that Cardenas was traveling at 35 to 45 miles per hour in a 25-mile-per-hour zone when he attempted to negotiate a left turn. Cardenas lost control of his car, swerved several times, and crashed through a retaining wall and into the backyard of Margaret Michel's home. Cardenas's car struck Michel, who was in her backyard apparently taking out the garbage, pinning her against some pine trees in her yard. Cardenas then fled the scene of the accident but was apprehended shortly thereafter. Approximately one hour after being taken into custody, Cardenas's blood alcohol level registered .24.

Michel, who was 69 years old at the time, suffered various injuries, including a compound fracture of the left leg, an open, deep wound to her left ankle, multiple breaks in the right leg, three broken bones in her right foot, a fractured pelvis, and a concussion. She was hospitalized for three months and underwent surgery during which a rod was placed in her right leg and her left leg was amputated in the midportion of the leg. She also suffered loss of memory and cognitive functions, which may be permanent, and will require physical, occupational, and psychological therapy. It is likely that she will not be able to walk except with a cane or walker.

As Cardenas had no known convictions for the purpose of computing his offender score, the standard ranges for the sentences were 12 to 14 months for the vehicular as-

sault and 6 to 12 months for the hit-and-run. The trial court imposed an exceptional sentence of the maximum allowable term of 60 months on the vehicular assault conviction and the standard range for the hit-and-run conviction, the sentences to run consecutively.

The trial court made the following conclusions of law in support of the sentence:

(1) When the accident occurred, the defendant was driving in a manner in which he knew of and disregarded a substantial risk that a wrongful act may occur and the disregard of that substantial risk was a gross deviation from conduct that a reasonable person would have exercised in the same situation. The defendant was also drunk.

(2) Margaret Michel was a particularly vulnerable victim.

(3) Margaret Michel suffered multiple injuries as a result of the crime.

(4) Margaret Michel's injuries were more serious than injuries normally inherent in the crimes of Vehicular Assault and Hit and Run.

Conclusion of Law in Supp. of Exceptional Sentence, Clerk's Papers at 29-30. The court also stated that any of the listed factors, alone or in combination, would be a substantial and compelling factor justifying the sentence imposed. *Id.*

█ Under the Sentencing Reform Act of 1981, a trial court must impose a sentence within the standard range unless it finds "substantial and compelling" reasons to justify a departure. RCW 9.94A.120(2), (3). In reviewing an exceptional sentence, an appellate court undergoes a three-part analysis. First, the court asks whether the factors listed by the court for an exceptional sentence are supported by the underlying record. The court applies a "clearly erroneous" standard to this review. Second, the court must determine whether the factors used by the trial court are valid as a matter of law. Finally, the court must determine, under an "abuse of discretion" standard,

whether the sentence is clearly too lenient or clearly too excessive. *State v. Solberg*, 122 Wn.2d 688, 705, 861 P.2d 460 (1993); *State v. Batista*, 116 Wn.2d 777, 792, 808 P.2d 1141 (1991). In the current case, there is no dispute as to the factual findings of the trial court.[1] Therefore, we apply the "matter of law" standard, which requires the reviewing court to "independently determine, as a matter of law, if the sentencing judge's reasons justify the imposition of [an exceptional sentence]." *State v. Nordby*, 106 Wn.2d 514, 518, 723 P.2d 1117 (1986).

## AGGRAVATING FACTORS

The trial court relied on a number of factors to justify the exceptional sentence. We consider first the trial court's conclusion that an exceptional sentence was warranted by the fact that the injuries suffered by the victim were more serious than typical and that the victim suffered multiple injuries.

Although particularly severe injuries may be used to justify an exceptional sentence, the injury must be greater than that contemplated by the Legislature in setting the standard range. *State v. Armstrong*, 106 Wn.2d 547, 551, 723 P.2d 1111 (1986); *Nordby*, 106 Wn.2d at 519. The offense of which Cardenas was convicted, vehicular assault, contains the element of serious bodily injury, defined as "bodily injury which involves a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body." RCW 46.61.522 (1), (2). Michel's injuries, while severe, are evidently the type of injuries envisioned by the Legislature in setting the standard range. Consequently,

---

[1]Although Cardenas frames his objection to the trial court's use of the factor of "injury more serious than typical" as being unsupported in the record, he does not actually object to the findings of Michel's injuries, but to their characterization as more serious than inherent in the crime. As the Court of Appeals correctly observed, the determination of the underlying facts is a question of fact, whereas the determination of whether those facts justify an exceptional sentence is a question of law. *See State v. Solberg*, 122 Wn.2d 688, 703-04, 861 P.2d 460 (1993).

the severity of injuries suffered cannot justify an exceptional sentence. *See Nordby*, 106 Wn.2d at 519 (holding that severity of injury could not justify an exceptional sentence in a vehicular assault case).

In so holding, we distinguish this case from *State v. George*, 67 Wn. App. 217, 834 P.2d 664 (1992), *review denied*, 120 Wn.2d 1023, *overruled on other grounds by State v. Ritchie*, 126 Wn.2d 388, 894 P.2d 1308 (1995), relied on by the State. In *George*, the Court of Appeals upheld an exceptional sentence on an assault conviction based in part on the severity of the injuries suffered by the victim despite the fact that great bodily injury was an element of the crime. *Id.* However, the *George* court specifically distinguished *Nordby* because of George's "deliberate and gratuitous violence" that caused the victim's injuries. *Id.* at 223 n.3. While we agree that the sentencing judge in *George* was justified in imposing an exceptional sentence based on the defendant's deliberate and gratuitous violence, to the extent that the *George* opinion suggests that an exceptional sentence can be imposed merely because of the severity of the injury, where this is an element of the crime, we disapprove of its reasoning.[2]

██ The trial court's reliance on the fact that the victim suffered multiple injuries is also misplaced. The infliction of multiple injuries can support an exceptional sentence, but this factor has been approved only where the infliction of multiple injuries was caused by multiple acts. *See, e.g., State v. Armstrong*, 106 Wn.2d 547, 550, 723 P.2d 1111 (1986) (defendant threw boiling coffee on child, then plunged child's foot in coffee); *State v. McClure*, 64 Wn. App. 528, 531, 827 P.2d 290 (1992) (stating that "focus is on acts which distinguish the crime" in a case involving

---

[2]The State also cited for the first time at oral argument *State v. Flake*, 76 Wn. App. 174, 883 P.2d 341 (1994). Although the Court of Appeals in that case upheld an exceptional sentence for vehicular assault based in part on the severity of the injuries, the defendant had expressly conceded not only that the injuries far surpassed those typical of a vehicular assault but that severity of the injuries was a valid aggravating factor. *Id.* at 181 n.8. The *Flake* court was therefore not faced with the issue we decide today.

repeated blows to the head); *State v. Warren*, 63 Wn. App. 477, 478, 820 P.2d 65 (1991) (victim shot five times), *review denied*, 118 Wn.2d 1030, 828 P.2d 564 (1992). Requiring multiple acts that cause multiple injuries is consistent with the original rationale for using multiple injuries as a valid aggravating factor, a rationale analogous to the statutorily recognized factor of multiple incidents of major economic offenses. *Armstrong*, 106 Wn.2d at 550. Thus, where the defendant has committed multiple acts in causing the injuries, the analogy to multiple *incidents* of economic offenses is appropriate.

█ Here, as the Court of Appeals recognized, the vehicular assault caused multiple injuries in a single incident. Moreover, the very nature of a vehicular assault is that it often results in multiple injuries from this single act. Thus, the multiple injuries in this case do not distinguish the crime from the typical vehicular assault and cannot justify the exceptional sentence imposed.

The trial court also concluded that because Cardenas was both driving recklessly and drunk, the exceptional sentence was justified. The State relies on two grounds in arguing that the Court of Appeals erred in reversing the trial court on this basis: the commission of alternative elements of a crime and a line of cases recognizing the factor of particularly egregious conduct in vehicular assault cases where the defendant is extraordinarily drunk and reckless.

The State first argues that Cardenas's sentence can be upheld because he satisfied two alternative grounds for commission of the offense, being both reckless and drunk,[3] citing *State v. Grewe*, 117 Wn.2d 211, 813 P.2d 1238 (1991). In *Grewe*, the defendant was convicted of indecent liberties for sexual contact with a person under 14 years of age. An alternative means of committing the crime under the statute involved being in a position of authority. The

---

[3]A person is guilty of vehicular assault by causing serious bodily injury and either driving while drunk or driving recklessly. RCW 46.61.522 (1).

trial court imposed an exceptional sentence based on an abuse of trust factor. *Id.* at 213. The defendant did not dispute that abuse of trust was a valid aggravating factor but argued that it had already been considered by the Legislature because it was included as an alternative means of committing the crime. *Id.* at 216. The *Grewe* court responded by stating that where criminal conduct includes all of the elements of one form of a crime as well as the elements of an alternative form, the crime exceeds that envisioned by the Legislature. *Id.* at 218. The court thus held that abuse of trust could be considered as an aggravating factor where it was not an element of the alternative used to convict the defendant. *Id.*

The State appears to read *Grewe* as stating that satisfying two alternative means of committing a crime always justifies an exceptional sentence. However, in *Grewe*, the trial court did not base the exceptional sentence on the satisfaction of two alternative means of committing the crime; it simply stated a substantial and compelling reason to depart from the standard-range sentence—abuse of trust—which also happened to be an alternative means of committing the crime. *Id.* at 213. Here, on the other hand, the trial court merely stated both of the possible factual bases for the conviction. The trial court did not specify that being either drunk or reckless was a substantial and compelling factor justifying the exceptional sentence. Moreover, it is not clear from the record under which alternative the defendant was charged and convicted. Accordingly, we conclude that the trial court did not identify a substantial and compelling reason for imposing an exceptional sentence that was not an element of the crime.

██ ██ The State next argues that the defendant's conduct was so egregious that it justified an exceptional sentence. Court of Appeals decisions have recognized that egregious conduct of a defendant in vehicular assault cases can justify an exceptional sentence. *See State v. Oksoktaruk*, 70 Wn. App. 768, 856 P.2d 1099 (1993); *State v. Perez*, 69 Wn. App. 133, 847 P.2d 532, *review denied,* 122 Wn.2d

1015 (1993). However, in those cases, the trial court had made a specific conclusion that the conduct involved was more egregious than that typically associated with the crime. *Oksoktaruk*, 70 Wn. App. at 771; *Perez*, 69 Wn. App. at 136. In contrast, here the trial judge stated only that Cardenas drove in a reckless manner and that he was drunk, remaining silent as to whether, in her view, this conduct was atypically egregious. Conclusion of Law in Supp. of Exceptional Sentence, Clerk's Papers 29-30. The mere recitation by the trial judge of the facts underlying the offense does not constitute a determination by the trial court that the conduct was atypically egregious. Because we cannot say, as a matter of law, that the conduct in the present case was atypically egregious, an exceptional sentence is not warranted on this basis.

Finally, we turn to the trial court's conclusion that the victim was particularly vulnerable. We have previously established that a pedestrian victim of a vehicular assault may be considered particularly vulnerable, being unable to take evasive action and not having the protection of being in another vehicle. *State v. Nordby*, 106 Wn.2d 514, 518, 723 P.2d 1117 (1986). A pedestrian is even more vulnerable when she has no reason to suspect that she may be in imminent danger. *See State v. Thomas*, 57 Wn. App. 403, 788 P.2d 24 (upholding exceptional sentence based on victim vulnerability where defendant sped through parking lot, hitting unsuspecting pedestrian), *review denied*, 115 Wn.2d 1003, 795 P.2d 1155 (1990).

■ Like the victims in *Nordby* and *Thomas*, Michel was not in another car and thus was unable to take evasive action and had less protection from injury. Michel was even more vulnerable than the victims in those cases because she was in an area where she expected to be safe. In her oral opinion, the trial court appropriately highlighted this fact, stating that she was imposing the exceptional sentence based on vulnerability because Michel was "in her back yard, a place where she should have been able to be safe, and she was not safe because, sir, of your activi-

ties." Verbatim Report of Proceedings (November 22, 1992) at 82. Michel had no reason to think that as she was putting out the garbage in her own backyard an out-of-control car would suddenly scale a retaining wall, barrel into her yard, and crush her. Consequently, she was not afforded even the limited protection that an alert pedestrian may have on a busy street of foreseeing a possible accident and taking steps to prevent it. She was therefore particularly vulnerable to a vehicular assault.

■ Although recognizing these principles, the Court of Appeals distinguished *Nordby* and *Thomas* because Cardenas had not "intended to drive in an area where he knew, or should have known, there would be vulnerable pedestrians." *State v. Cardenas*, 77 Wn. App. 112, 115, 890 P.2d 21 (1995). We agree that the aggravating factor of victim vulnerability requires that the defendant knew or should have known of vulnerable pedestrians in the vicinity. Requiring that the defendant knew or should have known of a risk to vulnerable pedestrians comports with the statutory language regarding vulnerability of victims. RCW 9.94A.390(2)(b) requires that the defendant "knew or should have known that the victim . . . was particularly vulnerable . . . ." The rule is also consistent with Washington Court of Appeals decisions requiring more than mere vulnerability. *E.g., State v. Bedker*, 74 Wn. App. 87, 94, 871 P.2d 673 (focusing on vulnerability and whether defendant knew of it), *review denied*, 125 Wn.2d 1004, 886 P.2d 1133 (1994); *State v. Ross*, 71 Wn. App. 556, 565, 861 P.2d 473 (1993) (stating that defendant must know of vulnerability and that vulnerability must be a "substantial factor" in crime), *review denied*, 123 Wn.2d 1019 (1994); *State v. Jones*, 59 Wn. App. 744, 753, 801 P.2d 263 (1990) (focusing on vulnerability of victim, whether defendant knew or should have known of vulnerability, and whether vulnerability was a substantial factor), *review denied*, 116 Wn.2d 1021, 811 P.2d 219 (1991). Furthermore, without a requirement that the defendant should have known of a risk to vulnerable victims, virtually every

vehicular assault involving a pedestrian would justify an exceptional sentence.

We disagree, however, with the Court of Appeals conclusion that Cardenas had not "intended to drive in an area where he knew, or should have known, there would be vulnerable pedestrians." The trial court made no specific findings regarding whether Cardenas knew or should have known of a risk to pedestrians. Nonetheless, it is apparently undisputed that the incident occurred in a residential area, and there is no reason to suppose Cardenas did not know this. It is also reasonable to assume that given this, Cardenas either knew or should have known that there would be people such as the victim here, totally unprepared and vulnerable, when he drove recklessly through this area careening finally into the victim's own backyard.

Although we approve of only one of the three factors used by the trial court in imposing the exceptional sentence, we may uphold the exceptional sentence if we are satisfied that the trial court would have imposed the same sentence based solely upon the victim's particular vulnerability. *State v. Fisher*, 108 Wn.2d 419, 429-30, 430 n.7, 739 P.2d 683 (1987).

Here, the trial court specifically stated as a conclusion of law that any of the factors standing alone would be a substantial and compelling factor justifying the exceptional sentence. Clerk's Papers at 29-30. Moreover, in its oral opinion the court indicated that the primary reason for imposing the exceptional sentence was the vulnerability of the victim, stating that "[b]ased on the evidence and . . . Findings of Fact, and given particularly the vulnerability of Miss Michel, . . . the Court will impose an exceptional sentence." Verbatim Report of Proceedings (November 22, 1992) at 82. Accordingly, we hold that it is unnecessary to remand to the trial court for resentencing as we are satisfied that it would have imposed the same sentence.

## Clearly Excessive Sentence

██ Finally, Cardenas argues that even if the aggravating factors support the imposition of an exceptional sentence, the sentence is clearly excessive. In determining whether a sentence is clearly excessive, we apply an abuse of discretion standard. *State v. Ritchie*, 126 Wn.2d 388, 392, 894 P.2d 1308 (1995). The trial court's decision will not be disturbed unless the reviewing court finds that no reasonable judge would have imposed the exceptional sentence. *Id.* at 393 (citing *State v. Oxborrow*, 106 Wn.2d 525, 531, 723 P.2d 1123 (1986)). Given the circumstances of this crime, we cannot say that the imposition of the maximum allowable term is an abuse of discretion. The sentence is therefore not clearly excessive.

We reverse the Court of Appeals decision and reinstate the exceptional sentence.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, and TALMADGE, JJ., concur.

ALEXANDER, J. (dissenting) — I dissent because there are no findings of fact or conclusions of law to the effect that Cardenas knew or should have known of the victim's vulnerability. I would, therefore, remand for imposition of a sentence within the standard range.

A trial court may, of course, impose an exceptional sentence that exceeds the standard range when it determines that the facts of the case support a conclusion that aggravating circumstances are present. One statutorily designated aggravating circumstance is victim vulnerability. RCW 9.94A.390(2)(b).[4] Indeed, it was that factor

---

[4]RCW 9.94A.390 provides that the following is one of the "factors which the court may consider [as an aggravating circumstance] in the exercise of its discretion to impose an exceptional sentence":

". . . .

"(b) The defendant knew or should have known that the victim of the current offense was particularly vulnerable or incapable of resistance due to extreme youth, advanced age, disability, or ill health." RCW 9.94A.390(2)(b).

which the trial court relied upon, at least in part, to justify the exceptional sentence that was imposed here. Significantly, though, in order for this factor to come into play, the sentencing court must not only determine that the victim was vulnerable, but also that "[t]he defendant *knew or should have known* that the victim of the current offense was particularly vulnerable." RCW 9.94A.390(2)(b) (emphasis added).

Although the trial court concluded that Margaret Michel was "a particularly vulnerable victim," it did not enter a conclusion that Cardenas had knowledge of her vulnerability. The closest it came to doing so was its conclusion that Cardenas "knew of and disregarded a substantial risk that a wrongful act may occur." Clerk's Papers at 27. The latter conclusion does not, however, establish that Cardenas knew or should have known of Michel's vulnerability. Even if we assume, however, that it amounts to such a conclusion, the trial court did not make any findings of fact to support that conclusion. Furthermore, even if such findings had been entered, they fail because there is no evidence in this case upon which to base such findings. In essence, it is only the majority of this court that makes this finding and conclusion.

In registering my dissent, I am not suggesting that the trial court wrongly concluded that the victim, Michel, was "particularly vulnerable" to the physical forces of Cardenas's vehicle as she stood in her backyard. That conclusion is consistent with this court's expansive interpretation of what constitutes a particularly vulnerable victim. Although the statute, RCW 9.94A.390(2)(b), refers only to the conditions of "extreme youth, advanced age, disability, or ill health," as indicators of particular vulnerability, this court has added the "relatively defenseless status as a pedestrian" to the list of qualifying conditions. *See State v. Nordby,* 106 Wn.2d 514, 516 n.1, 723 P.2d 1117 (1986). Even conceding, though, that Michel's vulnerability as a pedestrian was of a kind that is contemplated under the statute, that is not enough to justify the enhanced

sentence that was imposed here. That is so because, as I have noted above, there was simply no showing that Cardenas knew or should have known that Michel was particularly vulnerable.

Although the record is silent on this matter, it seems reasonable to conclude that, as Cardenas was driving his automobile in the vicinity of Michel's home just prior to the accident, he was not actually aware of Michel's presence in her backyard. In addition, it follows that he was unaware that she was in a location to bear the force of his car in the event that he lost control of it. In that regard, the facts in this case stand in stark contrast to the facts in *Nordby*, a case in which the defendant observed the ultimate victims walking their bikes along the side of the road and intentionally swerved his vehicle towards them. Clearly, nothing like that happened here.

Neither can it be said that Cardenas "should have known" of Michel's vulnerability as a pedestrian. The facts found by the trial court indicate only that, just prior to the accident, Cardenas was "exceeding the speed limit" of 25 miles per hour.[5] Finding of Fact 1, Clerk's Papers at 28. At about this same time, Michel entered the backyard of her home to take out her garbage. Between Michel and the street on which Cardenas was driving there was a one- to two-foot-high retaining wall. Based solely on these facts, the majority concludes that it is "reasonable to assume that . . . Cardenas either knew or should have known that there would be people such as the victim" present. Majority Op. at 12. I disagree that such a conclusion can be founded on such a flimsy factual basis. Indeed, if constructive knowledge of victim vulnerability can be found in this case, it is hard to imagine a vehicular as-

---

[5]The majority describes the area in which Cardenas was driving as "a residential area." Majority Op. at 12. The only reference in the record to the character of the area, however, is an offhand comment made by the police officer who was the first to respond to the scene of the accident. When the prosecuting attorney asked the officer whether he was aware of the speed limit in the area of the collision, the officer answered as follows: "It's a residential area, it would be 25 miles per hour." Report of Proceedings at 15 (Dec. 22, 1992).

sault case where victim vulnerability could not be found. That is so because in every vehicular assault it is always conceivable, at least in hindsight, that a victim could be in a place where he or she could be struck by the defendant's vehicle.

In my view, a defendant should be charged with knowledge of a pedestrian's particular vulnerability only when the defendant clearly had a reason to know, based on the circumstances of the case, that pedestrians were present in the area in which he or she was driving. Thus, a defendant traveling through a school zone during a school day could well be found to have constructive knowledge that his or her driving could cause a risk of harm to children at play. Similarly, a person driving in a downtown retail district with sidewalks crowded with shoppers should know that there is risk of harm to the pedestrians should he or she fail to drive safely. On the other hand, it seems unreasonable to charge a driver with constructive knowledge that an unseen pedestrian is particularly vulnerable to the force of his or her car should the driver lose control of his or her vehicle while driving in an undeveloped or sparsely populated area in the middle of the night. In the final analysis, the situation here is more like the latter example than the former. In short, it was purely a sad and tragic happenstance that Michel was struck by Cardenas's automobile.

The requirement that the defendant know or should know of the victim's vulnerability in order to support an enhanced sentence is consistent with a theme that runs through RCW 9.94A.390(2), the statute authorizing exceptional sentences where aggravating circumstances are present. The theme is that an exceptional sentence is appropriate when a defendant acts in a particularly egregious manner or acts with a heightened level of culpability. An upward departure in a sentence is justified, for example, when a defendant acts with deliberate cruelty, or abuses a position of trust, or engages in a series of drug or economic offenses demonstrating a high degree

of sophistication or planning, etc. RCW 9.94A.390(2)(a)-(g). As it relates specifically to this case, that theme is inapplicable because the defendant, guilty as he is of the underlying offense of vehicular assault, did not act in a manner that evinces a higher level of culpability than is typical in a vehicular assault.

The majority properly concludes that the seriousness of the injuries suffered by Michel is not a factor that supports the exceptional sentence that was imposed here. Despite this observation, with which I agree, the majority invokes victim vulnerability to affirm the exceptional sentence imposed in this case. In my opinion, it is inappropriate to use this seemingly convenient factor to rationalize a legally unsupportable result.

JOHNSON and MADSEN, JJ., concur with ALEXANDER, J.