336

[No. 19705-7-II.   Division Two.   August 15, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN
ALLEN ELZA, *Appellant.*

*Thomas E. Doyle* and *Robert M. Quillian,* for appellant (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney,* and *Barbara L. Corey-Boulet, Deputy,* for respondent.

338

HOUGHTON, C.J. — John Allen Elza appeals from his conviction of first degree robbery and exceptional sentence of 252 months, arguing that he was denied his constitutional right to a jury trial, that there was insufficient evidence to convict, and that the trial court erred in ordering an exceptional sentence. We affirm the conviction, vacate the exceptional sentence and remand for resentencing.

## FACTS

Elza was charged by an information with First Degree Felony Murder contrary to RCW 9A.32.030(1)(c).[1] The information alleged that Elza, Henry Marshall, and Ruben Fisher, acting as accomplices, killed Dennis Griswold during a botched robbery attempt.

At trial, Fisher testified that Elza drove him and Marshall to the 38th Street Pub. Fisher acted as a lookout while Marshall entered and robbed the pub. When the

---

[1]RCW 9A.32.030(1) provides in relevant part:

**Murder in the first degree.** (1) A person is guilty of murder in the first degree when:

. . . .

(c) He or she commits or attempts to commit the crime of either (1) robbery in the first or second degree . . . and in the course of or in furtherance of such crime or in immediate flight therefrom, he or she, or another participant, causes the death of a person other than one of the participants: Except that in any prosecution under this subdivision (1)(c) in which the defendant was not the only participant in the underlying crime, if established by the defendant by a preponderance of the evidence, it is a defense that the defendant:

(i) Did not commit the homicidal act or in any way solicit, request, command, importune, cause, or aid the commission thereof; and

(ii) Was not armed with a deadly weapon, or any instrument, article, or substance readily capable of causing death or serious physical injury; and

(iii) Had no reasonable grounds to believe that any other participant was armed with such a weapon, instrument, article, or substance; and

(iv) Had no reasonable grounds to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury.

robbery was completed, Elza picked them up in his car and drove them to his house, where they split the money.

The jury acquitted Elza of felony murder, but convicted him of the lesser included offense of first degree robbery. The trial court sentenced Elza to a term of 252 months. In imposing the exceptional sentence, the court entered the following findings of fact and conclusions of law:

## FINDINGS OF FACT

. . . .

I. The results of this offense were greater than usual for the crime of which the defendant was convicted (robbery in the first degree). In the normal robbery, a person is either put in fear of harm or injured. Here, the primary victim (Dennis Griswold) was killed by the defendant's accomplice, clearly a greater result than usual in a robbery.

II. There were multiple victims in this case. Although Dennis Griswold and the 38th Street Pub owned by him were the main targets of the robbery, two other employees were also victimized. . . .

III. The defendant had passed on information to his accomplices which he had gained while in a position of trust due to his past employee/employer relationship with the victim, to-wit: the location of a side door and the schedule of the victim's activities, as well as the location of the office and the procedures used in relationship to the management of the money used in the business. This information was used to facilitate the crime. But for the defendant's special knowledge which he gave to his accomplices, Mr. Griswold would still be alive, as testimony at trial indicated that other possible victim/targets were being considered by the defendant and his accomplices until the defendant provided special knowledge about the 38th Street Pub.

## CONCLUSIONS OF LAW

### I.

That there are substantial and compelling reasons justifying an exceptional sentence outside the standard range.

### II.

That the defendant . . . should be incarcerated in the Department of Corrections for a determinate period of 252 months, which is the approximate life expectancy of the victim Dennis Griswold, who was 56 years of age when he was killed, and which is with [sic] the approximate range of a felony murder charge for this defendant.

## ANALYSIS

A. Exceptional Sentence

Elza contends that the trial court erred in imposing an exceptional sentence of 252 months for his first degree robbery conviction. This sentence is six times the standard range of 31 to 41 months, but less than the statutory maximum of life in prison. RCW 9A.56.200(2); RCW 9A.20.021(1)(a).

Substantial and compelling reasons must exist before a trial court can impose an exceptional sentence. RCW 9.94A.120(2); *State v. Nordby*, 106 Wn.2d 514, 516, 723 P.2d 1117 (1986). Here the trial court gave three reasons for imposing an exceptional sentence: (1) Griswold's death; (2) multiple victims; and (3) breach of trust.

■ Appellate review of an exceptional sentence involves a three-part analysis. First, the appellate court must determine, under the clearly erroneous standard, whether the factors relied upon for an exceptional sentence by the trial court are supported by the record. *State v. Cardenas*, 129 Wn.2d 1, 5, 914 P.2d 57 (1996). Second, the appellate court must determine whether the factors used by the trial court are valid as a matter of law. *Cardenas*, 129 Wn.2d at 5. Finally, the appellate court must determine

whether the sentencing court abused its discretion in imposing the exceptional sentence in light of the valid factors. *Cardenas,* 129 Wn.2d at 5-6.

### 1. Factors Supported by the Record

■ Elza does not assign error to the court's finding that there were multiple victims, and it is undisputed that Marshall killed Griswold during the robbery. Elza contends, however, that the record does not support the trial court's finding that he abused a position of trust. A defendant's breach of trust may be considered as an aggravating factor. RCW 9.94A.390(2)(d)(iv). We have previously held that breach of trust is a valid aggravating factor for crimes committed by employees against their former employers. *State v. Bissell,* 53 Wn. App. 499, 501, 767 P.2d 1388 (1989). An abuse of trust can occur even though the employment has been terminated, when the defendant uses knowledge gained during employment to commit the crime. *Bissell,* 53 Wn. App. at 500 (defendant used keys and knowledge about former employer's alarm system to facilitate burglary).

It is undisputed that approximately five to six years prior to the robbery, Elza worked for Griswold as a bartender at the Pub for three to four months. The sentencing court found that Elza passed on the following information that he gained during his prior employment at the 38th Street Pub: (1) the location of the side door; (2) a schedule of Griswold's activities; (3) the location of the office; and (4) Griswold's money handling procedures. Elza argues that there is nothing in the record to support a finding that Marshall and Fisher used this information to facilitate the robbery. We disagree.

Fisher testified that it was Elza who proposed robbing the Pub. Elza told Marshall and Fisher, "[w]hat he knew about the place, how much money. He said it would be more because there [were] more pull tabs there." Additionally, Fisher testified that Elza told them the locations of the side door and the alarm.

Dorothy Van Den Bulck, a Pub employee, testified that she had just finished collecting the money from the pull tab machines when Marshall entered the Pub. Griswold told Marshall that he did not have any money, but Marshall forced him into the office, where the pull tab money was stacked on a desk.

Steven Blanchfield testified that Marshall "knew which desk to go to first." Marshall also knew there was a safe in the office and demanded to know where it was. Marshall knew that there was more money in the Pub, but when Griswold refused to tell him where the other money was, Marshall shot and killed him.

This testimony supports the inference that Marshall used Elza's information to carry out the robbery. Accordingly, we hold that the sentencing court's finding that Elza abused a position of trust is supported by the record and is not clearly erroneous.

2. Validity of Factors

Elza concedes that multiple victims of the current offense and breach of trust are valid aggravating factors, but he contends that by considering Griswold's death as an aggravating factor, the trial court violated the "real facts" doctrine. We agree.

Under the real facts doctrine, a sentencing court may not impose a sentence based upon the elements of a more serious crime that the State did not charge or prove. RCW 9.94A.370(2); *State v. Wakefield,* 130 Wn.2d 464, 475-76, 925 P.2d 183 (1996). The policy behind the doctrine is to limit sentencing decisions to facts that are acknowledged, proven, or pleaded, and to prevent sentencing courts from imposing exceptional sentences when dissatisfied with the jury's verdict. *State v. Reynolds,* 80 Wn. App. 851, 857, 912 P.2d 494 (1996); *State v. Talley,* 83 Wn. App. 750, 761, 923 P.2d 721 (1996), *review granted,* 131 Wn.2d 1023 (1997).

Hence, facts which would constitute an additional

crime cannot be used as reasons to justify an exceptional sentence. *State v. Tunell,* 51 Wn. App. 274, 279, 753 P.2d 543 (1988). A sentencing court may, however, consider effects on the victim where "they are significantly more serious than in the usual case." *Tunell,* 51 Wn. App. at 279. *See also Talley,* 83 Wn. App. at 761 (holding that the sentencing court properly considered defendant's use of violence in sentencing for third degree rape). The Supreme Court recently indicated, in dicta, that facts establishing elements of a more serious offense should not be considered as aggravating factors. *Wakefield,* 130 Wn.2d at 476-77 (considering facts establishing second degree murder in determining a sentence for first degree manslaughter would be improper).

It is undisputed that Marshall killed Griswold during the robbery. Presumably, however, the jury acquitted Elza based upon the defense outlined in RCW 9A.32.030(1)(c). Thus, allowing the sentencing court to consider Griswold's death, despite the jury's acquittal, would render the statutory defense to felony murder meaningless. Further, because Griswold's death is an effect significantly more serious than the usual consequences of robbery, it may not be used as an aggravating factor. *Tunell,* 51 Wn. App. at 279; *see also Wakefield,* 130 Wn.2d at 476-77.

### 3. Excessive Term

■ Because we hold that Griswold's death was not a valid aggravating factor, in light of Elza's acquittal of that charge, we must determine whether the sentencing court abused its discretion in imposing a 252-month term based upon the two remaining factors. *Cardenas,* 129 Wn.2d at 5-6. In sentencing Elza to 252 months, the court noted in its conclusions of law that this term was roughly equivalent to Griswold's life expectancy and within the standard range for a felony murder sentence. Thus, Griswold's death was a principal reason for imposing the exceptional sentence. Because we are not persuaded that the court would have imposed the same sentence absent this factor,

we vacate the sentence and remand for resentencing without consideration of this factor. *Cardenas,* 129 Wn.2d at 13. In resentencing, the court may, of course, consider any appropriate factors warranting an exceptional sentence.

## B. Jury Trial

■ Elza also contends that by imposing an exceptional sentence roughly equivalent to the standard range for felony murder, he was denied his constitutional right to a jury trial. Specifically, he asserts that because the jury acquitted him of felony murder, the trial court's sentence was tantamount to a judgment notwithstanding the verdict. Elza fails to cite any authority in support of this argument. We therefore decline to review this claimed error. *State.v. Lord,* 117 Wn.2d 829, 853, 822 P.2d 177 (1991), *cert. denied,* 506 U.S. 856 (1992).

## C. Sufficiency of the Evidence

■ Finally, Elza contends that there is insufficient evidence to support his conviction as an accomplice to first degree robbery. In reviewing sufficiency of the evidence challenges, an appellate court determines, after viewing the evidence in a light most favorable to the State, whether any rational trier of fact could find guilt beyond a reasonable doubt. *State v. Salinas,* 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A claim of insufficient evidence admits the truth of the State's evidence. *State v. Pacheco,* 70 Wn. App. 27, 38-39, 851 P.2d 734 (1993), *rev'd on other grounds,* 125 Wn.2d 150 (1994). All reasonable inferences from the evidence must be drawn in favor of the State. *Salinas,* 119 Wn.2d at 201.

Viewing the testimony of Fisher, Van Den Bulck, and Blanchfield in a light most favorable to the State, there was evidence to show that Elza provided information about the Pub to Marshall and that he drove the getaway car. From this evidence and reasonable inferences, a jury could find that there was sufficient evidence to prove beyond a

reasonable doubt that Elza knowingly aided and encouraged Marshall in robbing the 38th Street Pub.

The conviction is affirmed, the exceptional sentence is vacated and the case is remanded for resentencing.

SEINFELD and HUNT, JJ., concur.