**FILED**
**JUNE 8, 2023**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No.  38534-5-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| LUCAS JAMES HOVEY, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, A.C.J. — Lucas James Hovey appeals his convictions for

first degree robbery and attempted second degree kidnapping.  We remand for the trial

court to strike the community custody supervision fee, but otherwise affirm.

FACTS

Marissa Llamas left her apartment and walked toward her parked car.  An

unknown masked assailant came from behind with a firearm, placed it against the back of

her head, and said he would shoot her.  He tried to force Ms. Llamas into her car, but she

struggled and resisted.

Lucas Hovey was nearby in his own car.  He got out of his car and directed the

masked assailant to put Ms. Llamas into his car.  Ms. Llamas continued to struggle.  Her

purse, which had $800 in it, was taken. The assailant said, "No hard feelings," got into

Mr. Hovey's car, and Mr. Hovey drove away. Rep. of Proc. (RP) at 77.

Soon after, Ms. Llamas called 911 to report the crimes. In an excited manner, she

identified Mr. Hovey, with whom she had prior contacts, as one of the men involved.

When the officer arrived, Ms. Llamas spoke to him and provided a Facebook picture of

Mr. Hovey. The officer described Ms. Llamas as crying and visibly shaking. She told the

officer that the masked assailant had hit her on the back of her head with the gun. The

officer took a photograph of the injury.

The next day, law enforcement gathered video from the apartment's security

camera. Video footage showed Ms. Llamas's car turning into the parking lot prior to the

encounter, Mr. Hovey's car passing the entrance 10 minutes later, and Mr. Hovey's car

passing in the opposite direction 5 minutes later. It does not show what happened.

*Procedure and trial*

The State charged Mr. Hovey with robbery in the first degree and attempted

kidnapping in the second degree, both with firearm enhancements. Mr. Hovey pleaded

not guilty and later waived his right to a jury trial.

At the start of trial, the State asked the court's permission to play a recording of Ms. Llamas's 911 call in lieu of an opening statement. Mr. Hovey objected. The trial court overruled the objection.

In its case-in-chief, the State presented the evidence outlined above. In her testimony, Ms. Llamas marked an exhibit that depicted Mr. Hovey's car parked near hers in the apartment's main parking lot. She also described the gun used by the unknown assailant as a big gun, wrapped with black tape. Throughout her testimony, Ms. Llamas referred to her assailants as "he" and "they," and the record is unclear which of the two actually took her purse.

Mr. Hovey testified in his own defense. He testified that he parked in an adjacent parking area, not the apartment's main parking lot. He said he purchased methamphetamine and Percocet pills from Ms. Llamas for $800, denied the presence of a third person, and denied that a robbery or an attempted kidnapping took place.

The trial court found Ms. Llamas's testimony generally credible. It found that the unknown assailant (1) was armed with a firearm during the encounter, (2) acted at Mr. Hovey's direction to attempt to force Ms. Llamas into Mr. Hovey's car, and (3) took from Ms. Llamas's grasp her purse containing $800. It concluded that Mr. Hovey was guilty as charged. Implicitly, this conclusion was based on accomplice liability.

3

ANALYSIS

Mr. Hovey raises several issues concerning his conviction and sentence. We address the issue related to his conviction, then we address those related to his sentence.

SUFFICIENCY OF EVIDENCE TO SUPPORT THE ROBBERY CONVICTION

Mr. Hovey contends the State presented insufficient evidence to sustain his conviction, premised on accomplice liability, for first degree robbery. We disagree.

In every criminal prosecution, due process requires that the State prove, beyond a reasonable doubt, every fact necessary to constitute the charged crime. *In re Winship*, 397 U.S. 358, 365, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Where a defendant challenges the sufficiency of the evidence, the proper inquiry is "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

Sufficiency of evidence in a bench trial is reviewed for "whether substantial evidence supports the challenged findings of fact and whether the findings support the trial court's conclusions of law." *State v. Smith*, 185 Wn. App. 945, 956, 344 P.3d 1244 (2015). "Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the finding's truth." *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699

4

(2005). Unchallenged findings of fact are verities on appeal. *State v. Lohr*, 164 Wn.

App. 414, 418, 263 P.3d 1287 (2011).

Mr. Hovey does not challenge that sufficient evidence exists to have convicted the

unknown assailant of robbery in the first degree. Rather, he challenges whether sufficient

evidence exists to hold him accountable for that crime as an accomplice.

> A person is an accomplice of another person in the commission of a crime
> if:
> (a) With knowledge that it will promote or facilitate the commission
> of the crime, he or she:
> (i) Solicits, commands, encourages, or requests such other person to
> commit it; or
> (ii) Aids or agrees to aid such other person in planning or
> committing it.

RCW 9A.08.020(3).

Mr. Hovey argues he did nothing to assist the unknown assailant in committing

first degree robbery. We disagree. Mr. Hovey, knowing that the unknown assailant had

taken Ms. Llamas's purse, aided him in absconding with the stolen article. We have

previously held that one may be liable for a crime as an accomplice by acting as the

getaway driver. *State v. McDaniel*, 155 Wn. App. 829, 864, 230 P.3d 245 (2010); *State v.*

*Rainwater*, 75 Wn. App. 256, 257 n.1, 876 P.2d 979 (1994); *State v. Elza*, 87 Wn. App.

336, 344-45, 941 P.2d 728 (1997).

FIREARM ENHANCEMENTS

Mr. Hovey initially contended the State provided insufficient evidence to prove beyond a reasonable doubt that a firearm was involved in the crime. In his reply, he concedes this argument. We accept his concession.

SAME CRIMINAL CONDUCT/INEFFECTIVE ASSISTANCE OF COUNSEL

Mr. Hovey assigns error to the trial court's failure to exercise its discretion in deciding whether his two convictions were the same criminal conduct for purposes of his offender score. We first review why the trial court opted not to exercise its discretion.

At sentencing, the trial court noted that an argument could be made that both convictions constituted the same criminal conduct for scoring purposes. Ultimately, the court did not disturb the checked box on the proposed judgment and sentence, which indicated the two were not the same criminal conduct. Its reason for leaving the checked box undisturbed was that the determination made no difference, given Mr. Hovey's "9+" offender score.

In his brief, Mr. Hovey transforms this argument into a claim of ineffective assistance of counsel. Regardless of how the argument is parsed, it fails.

We review a claim of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). Criminal defendants have a constitutionally

guaranteed right to effective assistance of counsel.  U.S. CONST. amend. VI; WASH.

CONST. art. I, § 22; *State v. Lopez*, 190 Wn.2d 104, 115, 410 P.3d 1117 (2018).

Washington follows the *Strickland*[1] standard for reversal of criminal convictions based on

ineffective assistance of counsel.  *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260

(2011).  A defendant bears the burden of showing that (1) his counsel's performance fell

below an objective standard of reasonableness based on consideration of all the

circumstances and, if so, (2) there is a reasonable probability that but for counsel's poor

performance the outcome of the proceedings would have been different.  *See id*. at 32-35.

If either prong is not satisfied, the inquiry ends.  *State v. Kyllo*, 166 Wn.2d 856, 862, 215

P.3d 177 (2009).

Here, Mr. Hovey fails to establish the second prong.  Even had his trial counsel

argued that his two convictions were not the same criminal conduct, his "9+" offender

score would not have changed; therefore, his sentencing range would have been the same.

ATTEMPTED KIDNAPPING SENTENCE

Mr. Hovey argues the trial court erred by imposing a full standard range sentence

for his conviction of attempted second degree kidnapping.  We disagree.

---

[1] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

For persons convicted of the anticipatory offenses of criminal attempt, the presumptive sentence is determined by locating the sentencing grid sentence range defined by the appropriate offender score, the seriousness level of the crime, and multiplying the range by 75 percent. RCW 9.94A.595; RCW 9.94A.533(2).

Kidnapping in the second degree is classified as a seriousness level V crime. RCW 9.94A.515. The standard range sentence for an offender with a score of "9+" and a crime seriousness level of V is 72-96 months. RCW 9.94A.510. Because the conviction was for the anticipatory offense of criminal attempt, we multiply the sentence range of 72-96 months by 75 percent. The sentence range listed on Mr. Hovey's judgment and sentence for attempted second degree kidnapping is 54-72 months, which equals 75 percent of the standard range. We conclude that Mr. Hovey was sentenced within the proper standard range.

COMMUNITY CUSTODY CONDITION

Mr. Hovey contends the trial court erred when it imposed a condition of community custody requiring him to pay supervision fees. The State concedes the fee must be struck. We agree.

RCW 9.94A.703 sets forth which community custody conditions a trial court must impose and which it may waive. Until recently, former RCW 9.94A.703(2)(d) (2018)

8

provided: "Unless waived by the court, as part of any term of community custody, the court shall order an offender to . . . [p]ay supervision fees as determined by the [Department of Corrections]."

While it was a discretionary condition of community custody at the time of Mr. Hovey's sentencing, the legislature recently removed the provision that allowed a trial court to impose community custody supervision fees as a condition of community custody. *See* former RCW 9.94A.703(2)(d) (2018); SECOND SUBSTITUTE H.B. 1818, 67th Leg., Reg. Sess. (Wash. 2022). Because his case is not yet final, Mr. Hovey may benefit from this change in the law. *State v. Wemhoff*, 24 Wn. App. 2d 198, 200-03, 519 P.3d 297 (2022). Therefore, we remand for the trial court to strike the requirement that Mr. Hovey pay the community custody supervision fee.

### STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

RAP 10.10 permits a defendant to file a pro se statement of additional grounds for review (SAG) if the defendant believes his appellate counsel has not adequately addressed certain matters. Mr. Hovey raises two arguments in his SAG— (1) prosecutorial misconduct and (2) actual innocence.

SAG ISSUE I:  PROSECUTORIAL MISCONDUCT

Mr. Hovey argues the prosecutor committed misconduct when she played Ms. Llamas's 911 call as an opening statement and again during the State's case-in-chief.  We disagree.

To prevail on a claim of prosecutorial misconduct, the defendant bears the burden to establish that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.  *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011).  Where, as here, the defendant fails to object or request a curative instruction at trial, the issue of misconduct is waived unless the conduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice.  *State v. Stenson*, 132 Wn.2d 668, 719, 940 P.2d 1239 (1997).  However, this was a bench trial.  Absent evidence to the contrary, we presume the judge in a bench trial does not consider improper matters or inadmissible evidence in rendering a verdict.  *In re Det. of H.N.*, 188 Wn. App. 744, 765, 355 P.3d 294 (2015).

Mr. Hovey claims the prosecutor played the 911 call for the improper purpose of reminding Ms. Llamas of her story.  If this was the prosecutor's purpose, we disagree that the prosecutor did anything improper.  There is nothing improper about preparing a

witness prior to testifying. We conclude that the prosecutor's playing of the 911 call was proper.

SAG ISSUE II: ACTUAL INNOCENCE

Mr. Hovey argues the security camera video supports his testimony and refutes Ms. Llamas's testimony sufficiently that his convictions should be vacated. Specifically, he argues the video shows he did not park in the apartment's main parking lot.

The trial court commented in its ruling about this. It could not tell whether the video refuted Ms. Llamas's description of where the encounter occurred:

> [W]hen I was watching the video . . . I couldn't tell whether anybody was rounding that corner to be where Ms. Llamas said she was at or to be where Mr. Hovey said he was at. And yet, I'm not sure that made any difference . . . .
> . . . .
> . . . [T]he testimony is that Mr. Hovey places himself in the parking lot. And whether he's parked in one section of the parking lot or another, I'm not sure it made a difference in terms of the activity that took place afterwards that's alleged.

RP at 141-43.

We reviewed the video footage and are convinced that Mr. Hovey did not turn into the apartment's main parking lot. Regardless, to the trial court, this made no difference. The trial court heard the 911 call, observed both primary witnesses testify, and found that

11

No. 38534-5-III
*State v. Hovey*

Ms. Llamas was generally credible. We will not disturb the trial court's credibility findings. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 682-83, 101 P.3d 1 (2004).

Remand to strike community custody fee, but otherwise affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, A/C.J.

WE CONCUR:

_____        _____
Siddoway, J.                                                   Staab, J.