[No. 37125-8-I.    Division One.    July 21, 1997.]

THE STATE OF WASHINGTON, *Respondent,* v. STUART
DAVID COWEN, *Appellant.*

*James R. Dixon, Kathryn A. Russell,* and *Nielsen, Broman & Associates,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Shannon D. Anderson, Deputy,* for respondent.

COLEMAN, J. — Stuart Cowen appeals his conviction for

attempted murder in the first degree, arguing that the self-defense instruction erroneously required the jury to consider whether he was in danger of actual imminent harm rather than whether he reasonably believed he was in such danger. The Supreme Court recently held that because a similar self-defense instruction was ambiguous, the jury instructions failed to properly state the applicable law. *State v. LeFaber*, 128 Wn.2d 896, 913 P.2d 369 (1996); *see State v. Hutchinson*, 85 Wn. App. 726, 934 P.2d 1201 (1997). The State argues that the error was harmless because the existence of "actual danger" was not at issue and because another instruction adequately apprised the jury of the correct standard. Because Cowen claimed that when he pulled out his gun, he thought the victim was reaching for a weapon, the jury could have found that Cowen reasonably believed he was in danger of imminent harm, yet convicted Cowen because he was not in actual danger. Moreover, no other instruction adequately apprised the jury of the correct standard of law. We thus reverse and remand for a new trial.

Cowen raises several other claims of error, and we address only those that are likely to arise on remand.[1]

## FACTS

Cowen was charged with attempting to murder Steve Thompson on October 31, 1994. At the time, Thompson was married to Shawn Smith, but Cowen and Smith were involved in a romantic relationship. Several witnesses testified as to the chain of events leading up to the shooting. While the testimony is disputed, all witnesses indicated that Cowen shot Thompson several times inside and outside a tavern and that there was a struggle.

Cowen testified as follows: In September 1994, he was

---

[1] We therefore do not consider the right to compel and the ineffective assistance of counsel issues. Additionally, the issues raised in Cowen's pro se supplemental brief are unlikely to arise on remand and will not be considered.

with Smith, her mother, and her brother, Aaron Ingram, when they were discussing Thompson's recent beating of Smith. Cowen said, " 'This guy sounds like he is pretty violent. Is there any reason I would have to worry about Steve?' " Ingram replied, " 'Well, no, but he knows who you are.' "

Also before the shooting, Jerry Glover, an acquaintance of Thompson's, told Cowen, " 'If [Thompson] ever calls you out to a fight be careful because he will wait until you turn to go to the door and that is when he will get you.' " Cowen replied, " 'I pack a gun and I have heard he packs a gun and I will do whatever I have to do to protect myself.' " Cowen denied ever telling Glover or Ingram that he "had it in for" Thompson.

Cowen brought his gun into the bar because the locks in his car did not work. When Cowen arrived at the tavern, Thompson first told Cowen to find another bar and then stated, "Where is your whore at?" Thompson continued, "Okay, where is my whore?" Cowen walked around next to Thompson and asked him, "Steve, what is your problem with me?" Thompson "simultaneously started to stand off his bar stool and reach behind him with his right arm. And said, 'So you want to fuck with me, hum?' "

When Cowen saw Thompson motion, Cowen jumped back and drew his weapon. Until he actually cocked the weapon, Thompson did not move back. After Cowen cocked his weapon, Thompson showed Cowen his hands. Cowen told Thompson to back up, and Thompson took a step back. Cowen then glanced back to make sure he did not trip as he tried to back out of the bar. When he turned back, Thompson was coming towards him reaching for Cowen's gun. As soon as Thompson made contact with Cowen, Cowen lowered his aim and shot Thompson in the leg. The shot did not, however, slow down Thompson. The two men struggled, and Thompson had his hands around Cowen's hips, with his arm pinning down Cowen's hand that held the gun. Cowen was able to break loose and fire a second shot. The second shot, however, had no apparent effect,

and Cowen was afraid he was going to end up on the floor. He therefore fired three more shots rapidly.

In discussing the proper self-defense instruction, defense counsel argued that the court should use WPIC 17.02, entitled "Lawful Force-Defense of Self and Others," rather than WPIC 16.02, entitled "Justifiable Homicide-Defense of Self and Others." The defense counsel argued that WPIC 17.02 applies only when someone is actually killed. The court rejected this argument, reasoning that the level of culpability to be proved from an attempted crime is the same as the mental state that has to be proved for the substantive offense. Thus, jury instruction 12 provided in part:

> Attempted homicide is justifiable when committed in the lawful defense of the defendant when:
>
> (1) the defendant reasonably believed that the victim intended to inflict death or great personal injury;
>
> (2) *there was imminent danger of such harm being accomplished*; and
>
> (3) the defendant employed such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the defendant, taking into consideration all the facts and circumstances as they appeared to him, at the time of and prior to the incident.

(Italics ours.)

The court also defined "great personal injury" in jury instruction 14:

> In determining whether an attempted homicide was justifiable, the phrase "great personal injury" means an injury that the defendant reasonably believed, in light of all the facts and circumstances known at the time, would produce severe pain and suffering if it were inflicted upon either the defendant or another person.

The court also provided the first aggressor instruction over defense counsel's exception. The instruction provided:

> No person may, by any intentional act reasonably likely to

provoke a belligerent response, create a necessity for acting in self-defense or defense of another and thereupon attempt to kill or use, offer, or attempt to use force upon or toward another person. Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense.

Cowen was found guilty of attempted murder in the first degree.

## JUSTIFIABLE HOMICIDE INSTRUCTION

Cowen argues that the trial court erred in providing the justifiable homicide instruction because the standard is whether the defendant reasonably believed there was danger of imminent harm, not whether such danger actually existed. The State contends that because the instruction's ambiguity does not constitute manifest constitutional error, Cowen has not preserved the issue for review. Alternatively, the State argues that the error was harmless.

■ The Supreme Court recently addressed the constitutionality of a similar jury instruction in *State v. LeFaber*, 128 Wn.2d 896, 902-03, 913 P.2d 369 (1996). In a 5-4 majority, the court noted that the standard for self-defense was well settled: A jury may find self-defense based on the defendant's subjective, reasonable belief of imminent harm; actual imminent harm is not necessary. *LeFaber*, 128 Wn.2d at 899. Since a proper grammatical reading of the instruction permitted the jury to find that actual imminent harm was necessary, the court determined that the jury could have applied the erroneous standard. The court thus reversed LeFaber's conviction. *LeFaber*, 128 Wn.2d at 903.

■ The State argues that reversal is not required

because unlike *LeFaber*, the error here was not manifest.[2] Thus, the State urges that Cowen has waived this issue on appeal by failing to object below. A party may raise a manifest error affecting a constitutional right for the first time on appeal. RAP 2.5(a). In *LeFaber*, the defendant also failed to object at trial. The court nevertheless reviewed the issue, finding that the error was of constitutional magnitude and "presumed prejudicial." *LeFaber*, 128 Wn.2d at 900. Review is thus appropriate here.

The State also claims that the error is harmless. "A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result, despite the error." *State v. Aumick*, 126 Wn.2d 422, 430, 894 P.2d 1325 (1995).

Following *LeFaber*, this court addressed a similar harmless error argument in *State v. Hutchinson*, 85 Wn. App. 726, 934 P.2d 1201 (1997), where the trial court provided the same ambiguous instruction. In determining whether the error was prejudicial, the court noted .that the test was whether "the jury could have accepted Hutchinson's version of events but found him guilty because of the court's legal misstatement[.]" *Hutchinson*, 85 Wn. App. at 732. The court determined that the defense developed factual evidence from which a jury could have reasonably believed that Hutchinson believed that he was in danger of imminent harm but rejected his self-defense claim because the harm was not actual. *Hutchinson*, 85 Wn. App. at 732-33. Therefore, the court concluded that the error was not harmless and reversed. *Hutchinson*, 85 Wn. App. at 733

The State argues that actual imminent harm was not at issue here because according to Cowen's testimony, Thompson was lunging for Cowen's gun. Thus, the State claims that the only issue is whether Cowen shot without

---

[2]The State also argues that Cowen has waived the manifest constitutional argument issue on appeal. This claim is meritless because Cowen sufficiently addresses the issue of review on pages 26-27 of appellant's opening brief.

provocation, not whether Cowen was actually in danger of imminent harm. But the jury could have found that Cowen pulled his weapon because he believed that Thompson was reaching for a weapon. The jury could have thus rejected Cowen's self-defense claim because Thompson in fact had no weapon. In other words, the jury could have concluded that Cowen was the first aggressor based on the erroneous instruction. This would deprive Cowen of his self-defense claim. Such an error cannot be deemed harmless. *See Hutchinson*, 85 Wn. App. at 733.

Second, the State argues that any ambiguity in this instruction was harmless because another instruction, the one defining "great personal injury," informed the jury that the critical issue was Cowen's reasonable belief that he was about to be harmed. That instruction, however, does not state that actual harm is unnecessary. Rather, the instruction merely defines "great personal injury" as "an injury that the defendant reasonably believed, in light of all the facts and circumstances known at the time, would produce severe pain and suffering[.]" The defendant could thus reasonably believe he was in danger of great personal injury but not be entitled to the self-defense instruction unless actual harm was imminent. This instruction does not clarify the ambiguity.

█ Third, the State argues that the error was harmless because overwhelming evidence indicates that Cowen was the "legal" aggressor and, therefore, the jury did not use the self-defense instruction. The facts, however, are disputed on this issue. Cowen presented evidence that he thought Thompson was initiating a fight by standing up, speaking provocatively, and reaching for a weapon. A juror could thus conclude that Thompson was the first aggressor and that Cowen was justified in pulling his gun. A juror could then determine that even though Thompson showed his hands, Cowen was justified in shooting because Thompson lunged for Cowen's gun. Thus, whether Cowen was the first aggressor is a jury question.

We therefore reverse and remand for a new trial be-

cause the erroneous self-defense instruction cannot be deemed harmless. We now address only those remaining issues that are likely to arise on remand.

## LAWFUL FORCE INSTRUCTION

Cowen argues that the court erred in providing WPIC 16.02 entitled "Justifiable Homicide-Defense of Self and Others" rather than WPIC 17.02, entitled "Lawful Force-Defense of Self and Others," because the former instruction applies only when the harm results in death. The State claims that because the crimes of "attempted homicide" and "homicide" contain the same mental state, WPIC 16.02 was properly used.

The distinction between the two instructions, WPIC 16.02 and WPIC 17.02, is in the degree of harm that the defendant must perceive. Under WPIC 16.02, the defendant must have "reasonably believed that the victim intended to *inflict death or great personal injury*" to justify homicide. (Italics ours.) By contrast, under WPIC 17.02, the defendant need only have reasonably believed that "he [was] about to be *injured*" to justify acts of force. (Emphasis added.)

Cowen argues that because the statute upon which WPIC 16.02 is based does not expressly include the crime of "attempted homicide," the WPIC cannot apply to this crime. *See* RCW 9A.16.050. The crime of attempted first-degree murder, however, requires the State to prove the same mental state as that of first-degree murder. *See* RCW 9A.28.020. Thus, we hold that the use of deadly force is justified only if the defendant perceived death or "great personal injury." This is because the important issue is the defendant's mental state in committing the crime, not whether the victim in fact died. Thus, a modified version of WPIC 16.02 without the *LeFaber* ambiguity discussed above should be provided on remand.

## EXCEPTIONAL SENTENCE

Cowen argues that the trial court erred in imposing an

exceptional upward sentence because the serious nature of the injuries and the conduct producing them were already contemplated by the Legislature in calculating the standard range. We disagree.

## Facts

Dr. Peter Rhee, an attending surgeon at Harborview Medical Center, testified that without major medical intervention, Thompson would have died. Thompson is paralyzed by a bullet severing his spinal cord and is in continuous pain. Because of an injury to his colon, Thompson must empty his stool from a bag on his side twice a day. Thompson also had a morphine pump surgically implanted into his body to mitigate the extreme pain.

At sentencing, the prosecutor asked for an exceptional sentence upward based on the offense's effect on the victim. The court granted the State's request because Thompson's injuries were "permanent, multiple and life devastating, and [were] therefore significantly more serious than what is typically involved in the crime of attempted murder in the first degree" and because "[t]he conduct producing the harm, and the harm produced, were significantly more serious than what is typically involved in the crime of attempted murder in the first degree."

## Analysis

In reviewing an exceptional sentence, the appellate court must consider (1) whether the reasons given by the trial court to justify the sentence are supported by the record; (2) whether those reasons justify an exceptional sentence as a matter of law; and (3) whether the sentence is clearly excessive. RCW 9.94A.210(4); *State v. Grewe*, 117 Wn.2d 211, 214, 813 P.2d 1238 (1991). The reasons must be " 'substantial and compelling,' " and take into account factors other than those that the Legislature necessarily considered in computing the presumptive range for the offense. *State v. Norby*, 106 Wn.2d 514, 518, 723 P.2d 1117

(1986) (quoting RCW 9.94A.120(2)). The appellate court reviews the sentencing court's factual findings under the clearly erroneous standard. *State v. Russell*, 69 Wn. App. 237, 250, 848 P.2d 743, *review denied*, 122 Wn.2d 1003 (1993). The court then determines whether, as a matter of law, "factually supported aggravating factors justify an exceptional sentence." *Russell*, 69 Wn. App. at 250.

██ The seriousness of a victim's injuries is generally a valid aggravating factor as long as " 'the conduct producing the harm, and the harm produced, were significantly more serious than what is typically involved in the crime.' " *State v. Flake*, 76 Wn. App. 174, 183, 883 P.2d 341 (1994) (*quoting State v. Warren*, 63 Wn. App. 477, 479, 820 P.2d 65 (1991), *review denied*, 118 Wn.2d 1030 (1992)). But the seriousness of the victim's injuries does not support an upward sentence if the factor was considered by the Legislature in defining the crime itself. *State v. Bourgeois*, 72 Wn. App. 650, 661-62, 866 P.2d 43 (1994). For instance, the Supreme Court recently held that an exceptional sentence based on seriousness of the injuries could not be imposed in a vehicular assault case because an element of the offense was serious bodily injury, which included the injuries that the victim suffered. *State v. Cardenas*, 129 Wn.2d 1, 6-7, 914 P.2d 57 (1996).

██ The question is thus whether the Legislature contemplated the harm inflicted here in determining the standard range for first degree attempted homicide. Cowen argues that in determining the standard range for attempted murder in the first degree, the Legislature must have considered injuries just short of death. *See* RCW 9A.32.030. But no known authority indicates that serious bodily injury is an element of first degree attempted homicide or that the Legislature necessarily contemplated such injuries in setting the standard range. Indeed, to commit first degree attempted homicide, the State must prove only that the defendant actually intended to take a life and took a substantial step toward the commission of that act. *State v. Hale*, 65 Wn. App. 752, 756, 829 P.2d 802

(1992). Thus, attempted first-degree homicide includes a wide range of conduct, including no injury at all.

▮ Cowen also argues that since the standard range for attempted murder is only twenty-five percent less serious than that for murder, the Legislature must have contemplated very serious injuries. But the fact that the standard range sentence is only twenty-five percent less severe for attempted homicide than for homicide is not determinative. In fact, the Legislature, in setting the standard range, could have believed that the more significant factor was the intent, not the resulting injury.

Here, Thompson will remain forever paralyzed, in extreme pain, and unable to perform basic bodily functions. Additionally, the multiple shots fired in this case— particularly the several shots fired successively—can be deemed conduct producing harm more serious than that typically involved in attempted first-degree murder. No authority indicates that the Legislature necessarily contemplated such injuries in determining the standard range.

· ▮ Cowen argues to the contrary, citing *Warren*, 63 Wn. App. at 478-79, where the court upheld the defendant's third-degree assault conviction after he shot his neighbor five times, thereby necessitating several hours of surgery and weeks of hospitalization. In upholding the exceptional sentence of one year based on the seriousness of the injuries, the court noted that the injuries here were *typical of an attempted murder*, not a third-degree assault." *Warren*, 63 Wn. App. at 479 (emphasis added). We do not find this dictum controlling. The injuries here were permanent and therefore more serious than those in *Warren*. We thus hold that the trial court did not abuse its discretion in imposing the exceptional sentence on this basis.

Reversed and remanded for a new trial.

The remainder of this opinion has no precedential value. Therefore it will be filed for public record in accordance with the rules governing unpublished opinions.

WEBSTER and COX, JJ., concur.

Reconsideration denied August 21, 1997.