240 P.3d 143 (2010)
STATE of Washington, Respondent,
v.
Troy Dean STUBBS, Petitioner.
No. 81650-6.
Supreme Court of Washington, En Banc.
Argued March 9, 2010.
Decided October 7, 2010.
David N. Gasch, Gasch Law Office, Spokane, WA, Susan F. Wilk, Washington Appellate Project, Seattle, WA, for Petitioner.
Antonio Demetrious Koures, Pend Oreille County Prosecutor's Office, Newport, WA, for Respondent.
David Allen, Allen Hansen & Maybrown, P.S., Seattle, WA, amicus counsel for Washington Association of Criminal Defense Lawyers.
Pamela Beth Loginsky, WAPA, Olympia, WA, Brian Martin McDonald, King County Prosecutor's Office, Seattle, WA, amicus *144 counsel for Washington Association of Prosecuting Attorneys.
ALEXANDER, J.
¶ 1 We granted Troy Dean Stubbs's petition to review a decision of the Court of Appeals in which that court affirmed an exceptional sentence that the trial court imposed on Stubbs for first degree assault. In sentencing Stubbs, the trial court relied on a jury finding that the "victim's injuries substantially exceed the level of bodily harm necessary to satisfy the elements of the offense." Clerk's Papers (CP) at 90. One of the elements, as set forth in the information charging Stubbs with first degree assault, was that Stubbs inflicted "great bodily harm" in the course of the assault, that degree of harm being defined as "bodily injury which creates a probability of death, . . . significant serious permanent disfigurement, or . . . a significant permanent loss or impairment of the function of any bodily part or organ." RCW 9A.04.110(4)(c). Stubbs maintains that the exceptional sentence was improper, arguing that no injury short of death can substantially exceed the level of bodily harm necessary to satisfy the element of "great bodily harm." We agree with Stubbs and hold that the trial court erred by imposing an exceptional sentence. Accordingly, we reverse the Court of Appeals and remand for resentencing within the standard range.

I. Facts
¶ 2 After consuming alcohol and ingesting methamphetamine at a party, Troy Stubbs went to Ryan Goodwin's motor home. Goodwin told Stubbs that he did not want him there because he was afraid that Stubbs would "steal something." Report of Proceedings (RP) (July 24-28, 2006) at 134. Stubbs responded by saying that the "biggest spider I ever seen" was behind Goodwin. Id. This remark caused Goodwin to turn, whereupon Stubbs stabbed him in the back of the neck with a knife. The knife blade lodged between two vertebrae and severed Goodwin's spinal cord. As a consequence, a propane torch that Goodwin had been holding fell out of his hand and started a fire. Stubbs then ran off, ignoring Goodwin's pleas for help. Although Goodwin was unable to move his legs, he managed to smother the fire and make a telephone call for help. The stabbing left Goodwin permanently paralyzed and confined to a wheelchair.

II. Procedural History
¶ 3 The State charged Stubbs in Pend Oreille County Superior Court with assault in the first degree pursuant to RCW 9A.36.011(1)(a) and/or (c).[1] In the information, the State indicated that it was seeking an enhanced sentence on the ground that, at the time of the commission of the offense, Stubbs was armed with a deadly weapon other than a firearm. The State later alleged an aggravating circumstance, to wit: "`the victim[']s injuries substantially exceed the level of bodily harm necessary to satisfy the elements of [the offense]'" pursuant to RCW 9.94A.535(3)(y).[2] CP at 12. Stubbs moved to "vacate" the aggravating factor on the ground that RCW 9.94A.535(3)(y) had no application to first degree assault as charged. The trial court denied his motion, concluding that it was a "fairly straightforward jury question and I don't have any business taking *145 it away from the jury on a . . . pretrial motion." RP (June 26, 2006) at 22.
¶ 4 At trial, Dr. Vivian Moise, a specialist in spinal cord injuries, testified that Goodwin suffers from a 50 percent loss of strength in his left arm, a two-thirds loss of strength in his right hand, and the total paralysis of both legs. She said that although Goodwin's diaphragm works, the muscles of his rib cage that help with breathing are paralyzed, increasing his risk of pneumonia. She added that his bladder and intestines are also paralyzed, with the result that Goodwin must manually induce bowel movements. Dr. Moise explained that paralysis causes additional medical problems, including a higher risk of stroke, seizure, death, as well as a shortened life expectancy.
¶ 5 The jury found Stubbs guilty of first degree assault and specifically determined that he was armed with a deadly weapon during the commission of the offense. In addition, it found by special interrogatory that the assault inflicted great bodily harm, and that "the victim's injuries substantially exceed the level of bodily harm necessary to satisfy the elements of the offense." CP at 90. Based on the jury's verdict and findings, the trial court imposed an exceptional sentence of 480 months, indicating that Goodwin's condition was a "fate worse than death." RP (Sept. 7, 2006) at 55. The sentence was twice the maximum standard range sentence and significantly greater than the standard range for second degree murder.[3] Stubbs appealed.
¶ 6 The Court of Appeals, Division Three affirmed the exceptional sentence, concluding that
[g]iven the evidence, the jury could find Mr. Goodwin did not present as a typical fixed and stable victim of first degree assault because Mr. Goodwin remains in jeopardy of death in a manner exceeding great bodily harm and has been forced to live in a suspended, tortured state between life and death during his shortened life expectancy.
State v. Stubbs, 144 Wash.App. 644, 650, 184 P.3d 660 (2008), review granted in part, 165 Wash.2d 1035, 203 P.3d 380 (2009). Judge John Schultheis dissented on the ground that Goodwin's injuries were encompassed within the definition of "great bodily harm."
¶ 7 Stubbs petitioned this court for review, contending, as he did at the Court of Appeals, that the trial court erred by imposing an exceptional sentence and that RCW 9.94A.535(3)(y) is unconstitutionally vague. We granted his petition. The Washington Association of Criminal Defense Lawyers and the Washington Association of Prosecuting Attorneys (WAPA) each filed a brief as amicus curiae.

III. Standard of Review
¶ 8 RCW 9.94A.535 provides that an exceptional sentence is subject to review only as set forth in RCW 9.94A.585(4). That statute provides as follows:
To reverse a sentence which is outside the standard sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing court are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard sentence range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.
RCW 9.94A.585(4) (emphasis added). As we noted in State v. Nordby, 106 Wash.2d 514, 517-18, 723 P.2d 1117 (1986), subsection (a) of this statute has both a factual and a legal component.[4] After the United States Supreme Court's decision in Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and our legislature's amendment of the Sentencing Reform Act of 1981(SRA), chapter 9.94A RCW, a jury must find any facts supporting aggravating circumstances beyond a reasonable doubt and by special interrogatory.[5] RCW *146 9.94A.537(3). A jury's finding by special interrogatory is reviewed under the sufficiency of the evidence standard. See Winbun v. Moore, 143 Wash.2d 206, 18 P.3d 576 (2001). Stubbs has not, however, challenged the sufficiency of the evidence that supported the jury's finding that Goodwin's injuries "substantially exceed the level of bodily harm necessary to satisfy the elements" of first degree assault. CP at 90. Rather, he contends that the finding does not "justify a sentence outside the standard sentence range for that offense." RCW 9.94A.585(4)(a). We review the legal justification for a sentence de novo. State v. Ferguson, 142 Wash.2d 631, 646, 15 P.3d 1271 (2001).

IV. Analysis
¶ 9 As he did at the Court of Appeals, Stubbs challenges the aggravating factor that the trial court concluded was support for the exceptional sentence it imposed. As we have observed, a trial court may impose a sentence above the standard range if the jury finds that the "victim's injuries substantially exceed the level of bodily harm necessary to satisfy the elements of the offense," and the sentencing court is satisfied that this is a "substantial and compelling reason[]" for an exceptional sentence. RCW 9.94A.535. As we have also noted, "great bodily harm," which is an element of the offense charged,[6] is defined as "bodily injury which creates a probability of death, or which causes significant serious permanent disfigurement, or . . . a significant permanent loss or impairment of the function of any bodily part or organ." RCW 9A.04.110(4)(c). Here, because the jury made the requisite finding, the issue is whether the trial court committed an error of law in imposing an exceptional sentence based on the severity of Goodwin's injuries.
¶ 10 Our opinions have established that "particularly severe injuries may be used to justify an exceptional sentence," but only if they are "greater than that contemplated by the Legislature in setting the standard range." State v. Cardenas, 129 Wash.2d 1, 6, 914 P.2d 57 (1996). Thus, in Nordby, we held that the severity of the victim's injuries did not justify an exceptional sentence for vehicular assault because "this factor was already considered in setting the presumptive sentence range" for that offense. Nordby, 106 Wash.2d at 519, 723 P.2d 1117. At the time, vehicular assault required the infliction of "serious bodily injury," defined as "`bodily injury which involves a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body.'" Id. (quoting former RCW 46.61.522(2) (1983)).[7] We concluded that the victim's injuries (two broken legs, a broken arm, and a coma that lasted several days) fit squarely within that definition.
¶ 11 Similarly, in State v. Armstrong, 106 Wash.2d 547, 723 P.2d 1111 (1986), we determined that the first and second degree burns inflicted on a baby with boiling coffee did not justify a sentence above the standard range, but simply brought the crime within the definition of second degree assault. Second degree assault then required the knowing infliction of "grievous bodily harm," which was defined as "`atrocious, aggravating, harmful, painful, hard to bear, serious in nature.'" State v. Salinas, 87 Wash.2d 112, 121, 549 P.2d 712 (1976) (quoting jury instruction). We concluded that this definition encompassed the burns the baby suffered and was "already accounted for in determining the presumptive sentence range" for second degree assault. Armstrong, 106 Wash.2d at 551, 723 P.2d 1111. Thus, it could not "be counted a second time to justify an exceptional sentence." Id. (citing Nordby, 106 Wash.2d at 518, 723 P.2d 1117; State v. *147 Baker, 40 Wash.App. 845, 700 P.2d 1198 (1985)).
¶ 12 Following our decisions in Nordby and Armstrong, the Court of Appeals, Division One, considered the aggravating factor of serious injury in the context of first degree assault in State v. George, 67 Wash.App. 217, 223, 834 P.2d 664 (1992), overruled on other grounds by State v. Ritchie, 126 Wash.2d 388, 894 P.2d 1308 (1995). In George, the court considered a record showing that two men assaulted a 77-year-old woman in the course of a robbery. In addition to being punched in the face, held down and raped, the victim in that case was hit in the head with a rifle stock five or six times until the stock broke. As a consequence, she suffered irreparable brain damage. Although the Court of Appeals acknowledged that the severity of a victim's injuries cannot be used to enhance a defendant's sentence if that factor was considered in defining the offense, it said that the effects of an offense on a victim may be used to justify an exceptional sentence "`if they are significantly more serious than in the usual case.'" Id. at 223, 834 P.2d 664 (quoting State v. Tunell, 51 Wash.App. 274, 279, 753 P.2d 543 (1988), overruled on other grounds by State v. Batista, 116 Wash.2d 777, 808 P.2d 1141 (1991)). After reviewing the definition of "great bodily harm," the Court of Appeals concluded that relegating a victim to a semivegetative state was "far more serious than that necessary to qualify as first degree assault" and that the trial court therefore had not erred in considering the severity of the victim's injuries. Id. at 223, 834 P.2d 664. The court acknowledged that its holding was "arguably" in conflict with this court's decision in Nordby, but it sought to distinguish Nordby on the ground that the seriousness of the injuries in that case was not "atypical" of a person struck by an automobile, "whereas here, the seriousness and permanence of the injuries resulted from the deliberate and gratuitous violence of the assault." Id. at n. 3 (emphasis added).
¶ 13 The same division of the Court of Appeals revisited the issue in State v. Bourgeois, 72 Wash.App. 650, 866 P.2d 43 (1994). There, the court held that the severity of the victim's injuries did not support a manifest injustice disposition in juvenile court for a first degree assault. The facts there were that a juvenile, Bourgeois, shot the co-owners of a store with a handgun. The shooting resulted in one victim losing his spleen and portions of his pancreas and colon. In reviewing the sentence, the court stated that comparing the actual injuries to the minimum level of injuries that could have led to the same conviction "avoids the relevant question: did the Legislature contemplate the injuries actually inflicted in defining, and setting the standard range for, the crime of conviction?" Id. at 662, 866 P.2d 43. It held that the injuries unambiguously fell within the statutory definition of "great bodily harm." The court reconciled its ruling with its prior ruling in George by noting that the exceptional sentence in George was supported by the aggravating circumstance of the "`deliberate and gratuitous violence of the assault.'" Id. at 663, 866 P.2d 43 (quoting George, 67 Wash.App. at 223 n. 3, 834 P.2d 664).
¶ 14 In another vehicular assault case, the aforementioned Cardenas, this court reiterated that a victim's injuries do not justify an exceptional sentence unless they are "greater than that contemplated by the Legislature in setting the standard range." Cardenas, 129 Wash.2d at 6, 914 P.2d 57 (citing Armstrong, 106 Wash.2d at 551, 723 P.2d 1111; Nordby, 106 Wash.2d at 519, 723 P.2d 1117). In keeping with Nordby, we consulted the statutory definition of "serious bodily injury" and concluded that the injuries in question were "evidently the type of injuries envisioned by the Legislature in setting the standard range." Id. at 6, 914 P.2d 57. Accordingly, we held that they could not be used to justify a sentence above the standard range. In so holding, we commented on the Court of Appeals decision in George, saying:
While we agree that the sentencing judge in George was justified in imposing an exceptional sentence based on the defendant's deliberate and gratuitous violence, to the extent that the George opinion suggests that an exceptional sentence can be imposed merely because of the severity of *148 the injury, where this is an element of the crime, we disapprove of its reasoning.
Id. at 7, 914 P.2d 57.
¶ 15 Here, the jury was told that one element of first degree assault is the infliction of "great bodily harm," and it was instructed that "[g]reat bodily harm" is "bodily injury that creates a probability of death, or which causes significant serious permanent disfigurement, or that causes a significant permanent loss or impairment of the function of any bodily part or organ." CP at 76, 79. In light of our case law, the question is whether the injuries in this case are greater than those contemplated by the legislature in establishing the standard range. In other words, do they fall within the statutory definition of "great bodily harm" or outside it? Notably, the legislature has not defined a level of harm greater than "great bodily harm."[8] That element, moreover, encompasses bodily injury that "creates a probability of death." It is, of course, true that the "probability of death" need not be permanent. "Great bodily harm" can occur even if the victim fully recovers from a life-threatening injury, Br. of Amicus Curiae WAPA at 7; but a permanent "probability of death," such as the shortened life expectancy[9] and persistent risk of stroke, seizure, or death such as that which attends Goodwin's paralysis, nonetheless falls within the statutory definition of "great bodily harm." Indeed, we cannot imagine an injury that exceeds "great bodily harm" but leaves the victim alive.[10] "Great bodily harm," then, encompasses the most serious injuries short of death. No injury can exceed this level of harm, let alone substantially exceed it. Therefore, under the test articulated in our past opinions, we would not hesitate to hold that the severity of Goodwin's injuries cannot support a sentence above the standard range because they fall within the definition of "great bodily harm."
¶ 16 The statute in question, however, RCW 9.94A.535(3)(y), creates a somewhat different test than we have employed in the past. Instead of looking at the bodily harm element of the offense to see if the victim's injuries fit within the definition of that element, the statute asks a jury to find that "[t]he victim's injuries substantially exceed the level of bodily harm necessary to satisfy the elements of the offense." RCW 9.94A.535(3)(y) (emphasis added). In other word, it directs the trier of fact to measure the victim's actual injuries against the minimum injury that would satisfy the definition of, in this case, "great bodily harm" to see if they "substantially exceed" that benchmark. As we have seen, no injury can exceed the definition of "great bodily harm." The question, then, is whether injuries that fall within that definition are, nevertheless, so much worse than what is necessary to satisfy that element that they can be said not only to exceed, but to substantially exceed, that minimum.
¶ 17 The State contends that they can, pointing to the range of possible injuries that exists within each level of bodily harm defined by the legislaturebodily harm, serious bodily harm, and great bodily harm. A broken leg, for example, would be "serious bodily harm," but so would two broken legs and a coma that lasts several days. See Nordby, 106 Wash.2d at 519, 723 P.2d 1117. Likewise, the loss of a leg, a "significant permanent loss . . . of the function of [a] bodily part," would qualify as "great bodily harm"; but so would paraplegia. In the *149 State's view, injuries at the high end of the "great bodily harm" range not only exceed, but substantially exceed injuries at the low end of the range. According to amicus WAPA:
Had Goodwin only lost a finger or toe, Stubbs would have committed first-degree assault. However, the injuries that Stubbs caused went much further. Goodwin is completely paralyzed from the waist down and partially paralyzed in his arms and chest. His life expectancy is significantly reduced; he has a much higher risk for contracting pneumonia or suffering from a seizure or stroke. These injuries are permanent and they substantially exceed the type of injuries required to establish great bodily harm.
Br. of Amicus WAPA at 7-8. We reject this reading of RCW 9.94A.535(3)(y).
¶ 18 Though injuries at the far end of the spectrum of "great bodily harm" exceed the minimum, the legislature evidently views them as differing in degree, not kind: The loss of a finger or toe that amicus WAPA proposes as a benchmark satisfies the third prong of the definition of "great bodily harm," "significant permanent loss . . . of the function of any bodily part," but the grave injuries inflicted on Goodwin, which continue to pose a "probability of death," satisfy the first prong of the definition of "great bodily harm." Significantly, both prongs define the same level of bodily harm; namely, "great bodily harm." While there are different degrees of "great bodily harm," the legislature has classified injuries such as Goodwin's that create a probability of death the same as injuries akin to WAPA's benchmark of a significant permanent loss or impairment of the function of a bodily part or organ. One case of "great bodily harm," then, is not qualitatively different than another case. Such a leap is best understood as the jump from "bodily harm" to "substantial bodily harm," or from "substantial bodily harm" to "great bodily harm." That is what is meant by "substantially exceeds."
¶ 19 We are confident that our conclusion is faithful to the legislature's intent in codifying RCW 9.94A.535(3)(y). In conforming the SRA to the United States Supreme Court's ruling in Blakely, the legislature said:
The legislature intends that aggravating facts, other than the fact of a prior conviction, will be placed before the jury. The legislature intends that the sentencing court will then decide whether or not the aggravating fact is a substantial and compelling reason to impose greater punishment. The legislature intends to create a new criminal procedure for imposing greater punishment than the standard range or conditions and to codify existing common law aggravating factors, without expanding or restricting existing statutory or common law aggravating circumstances. The legislature does not intend the codification of common law aggravating factors to expand or restrict currently available statutory or common law aggravating circumstances.

LAWS OF 2005, ch. 68, § 1, codified at RCW 9.94A.535 (emphasis added). As we have seen, the aggravating factor of serious injury did not apply to first degree assault under RCW 9A.36.011(1)(c) prior to codification. To read RCW 9.94A.535(3)(y) as doing so now would result in the "expan[sion of] . . . available . . . common law aggravating circumstances," contrary to the express intent of the legislature.

V. Conclusion
¶ 20 Although the injuries Goodwin suffered were significant, we conclude that, under the statutory regime, no injury can "substantially exceed" the level of bodily harm necessary to satisfy the element of "great bodily harm." Therefore, we hold that the trial court erred by relying on the jury's finding regarding the severity of Goodwin's injuries to justify the exceptional sentence that it imposed. We reverse the Court of Appeals and remand to the trial court for resentencing within the standard range. In light of our decision, it is unnecessary for us to decide whether RCW 9.94A.535(3)(y) is unconstitutionally vague.
WE CONCUR: BARBARA A. MADSEN, Chief Justice, CHARLES W. JOHNSON, RICHARD B. SANDERS, TOM *150 CHAMBERS, SUSAN OWENS, MARY E. FAIRHURST, and DEBRA L. STEPHENS, Justices.
J.M. JOHNSON, J. (dissenting).
¶ 21 In reversing Troy Dean Stubbs's exceptional sentence, the majority overturns a jury's express finding and mistakenly concludes that the severe injury aggravator codified by the legislature in RCW 9.94A.535(3)(y) does not apply to first degree assault. See majority at 149. I cannot join the majority in doing so. I would hold that extreme injuries such as those suffered by Ryan Goodwin can be found to substantially exceed the level of harm necessary to satisfy the elements of first degree assault. I would also hold that the injuries inflicted by Stubbs in this case were properly and expressly found by the jury to justify an exceptional sentence. I therefore dissent.
¶ 22 As the majority notes, the State charged Stubbs with first degree assault by alternate means pursuant to RCW 9A.36.011(1)(a) and/or (c). The first of these means applies if a person "[a]ssaults another with . . . any deadly weapon . . . likely to produce great bodily harm or death." RCW 9A.36.011(1)(a) (emphasis added). No injury is even necessary under this means; only use of a weapon likely to cause great harm. The second means applies if a person "[a]ssaults another and inflicts great bodily harm," RCW 9A.36.011(1)(c) (emphasis added). Some actual bodily harm is required under this means.
¶ 23 I would hold that severe injuries can substantially exceed the level of harm necessary to satisfy the "great bodily harm" element of RCW 9A.36.011(1)(a) and/or (c), and that Goodwin's injuries do substantially exceed that level of harm. Stubbs viciously stabbed Goodwin in the neck when Goodwin's back was turned. This was first degree assault under both of the means described above. As a result, Goodwin has lost half of the strength in his left arm and two-thirds of the strength in his right hand. His rib cage muscles, bladder, intestines, and legs are completely and permanently paralyzed. Goodwin requires a catheter, must induce his bowel movements by hand, and is impotent. Goodwin's life expectancy has been reduced by 17 years because of these injuries, and he faces a higher risk of pneumonia, stroke, and seizure for the rest of his now-shortened life. The trial court described his suffering as a "fate worse than death." Report of Proceedings (Sept. 7, 2005) at 55.
¶ 24 As the jury expressly found, these injuries substantially exceed the level of harm necessary to satisfy the "great bodily harm" element of first degree assault.[1] "Great bodily harm" includes bodily injuries that create either (i) a probability of death, (ii) significant serious permanent disfigurement, or (iii) significant permanent loss or impairment of the function of any bodily part or organ. RCW 9A.04.110(4)(c). Goodwin's injuries, as described above, went beyond this level of harm: they reduced Goodwin's life expectancy by nearly two decades, permanently limited the function of his arms and lungs, and permanently paralyzed his legs, bladder, and intestines. In other words, Stubbs's assault did not merely create a probability of death; it created a certainty of a hastened death, shortening Goodwin's life by decades. Stubbs did not merely inhibit the function of bodily parts or organs; he destroyed several of Goodwin's bodily parts or organs. Thus, in a meaningful, quantitative way, the harm that Stubbs caused substantially exceeds that which is necessary to satisfy the "great bodily harm" element of first degree assault.[2]
¶ 25 As the Court of Appeals described it, Goodwin now "live[s] in a suspended, tortured state between life and death." State v. *151 Stubbs, 144 Wash.App. 644, 650, 184 P.3d 660 (2008). An expert at trial testified that he continuously faces death as a result of Stubbs's assault: His injuries could kill him at any moment by causing a fatal stroke, and the paralysis of his rib cage muscles could cause him to contract a deadly lung infection. This is hardly equivalent to the injuries of most first degree assault victims, many of whom fully recover. Goodwin's suffering thus substantially exceeds that which is necessary to satisfy the "great bodily harm" element of first degree assault from a qualitative, as well as a quantitative, perspective.
¶ 26 Having explained how Goodwin's injuries substantially exceed the level of harm necessary to satisfy the elements of first degree assault, I turn now to the question of whether such severe injuries, as supported by an express jury finding of severity, justify Stubbs's exceptional sentence.
¶ 27 I agree with the majority that only injuries "`greater than that contemplated by the Legislature in setting the standard range'" may justify an exceptional sentence. Majority at 146 (quoting State v. Cardenas, 129 Wash.2d 1, 6, 914 P.2d 57 (1996)). However, the majority is clearly wrong in holding that the legislature intended the standard range sentence for first degree assault to encompass extreme injuries such as those suffered by Goodwin. Id. at 14.
¶ 28 The legislature intended chapter RCW 9.94A RCW to "codify existing common law aggravating factors." Laws of 2005, ch. 68, § 1, codified at RCW 9.94A.537. The majority argues that common law existing at the time of codification prohibited the severity of a victim's injuries from supporting a sentence above the standard range and that the legislature codified this prohibition in RCW 9.94A.535(3)(y). Majority at 146-48, 149 (citing Cardenas, 129 Wash.2d at 1, 914 P.2d 57; State v. Armstrong, 106 Wash.2d 547, 723 P.2d 1111 (1986); State v. Nordby, 106 Wash.2d 514, 723 P.2d 1117 (1986); State v. Bourgeois, 72 Wash.App. 650, 866 P.2d 43 (1994); State v. George, 67 Wash.App. 217, 834 P.2d 664 (1992), overruled on other grounds by State v. Ritchie, 126 Wash.2d 388, 894 P.2d 1308 (1995)).
¶ 29 I disagree with the majority's characterization of these cases. Three cases involve crimes different from first degree assault and therefore do not control today's decision of whether the severity of a victim's injuries can support an exceptional sentence here. See Cardenas, 129 Wash.2d at 6-7, 914 P.2d 57 (vehicular assault); Armstrong, 106 Wash.2d at 550-51, 723 P.2d 1111 (second degree assault); Nordby, 106 Wash.2d at 519, 723 P.2d 1117 (vehicular assault). Moreover, the remaining two cases do not hold, as the majority infers, that no injury can exceed the level of harm covered by the "great bodily harm" element of first degree assault, nor do they hold that RCW 9.94A.535(3)(y) does not apply to that crime. Majority at 148.
¶ 30 In the first of these cases, George, the Court of Appeals acknowledged that "[t]he seriousness of a victim's injuries cannot be used to enhance a defendant's sentence if that factor was considered in defining the crime itself." 67 Wash.App. at 222, 834 P.2d 664 (emphasis added) (citing State v. Tunell, 51 Wash.App. 274, 279, 753 P.2d 543 (1988), overruled on other grounds by State v. Batista, 116 Wash.2d 777, 808 P.2d 1141 (1991)). The court was correct up to this point. However, it then added that the gravity of a victim's injuries "`may be used to justify an exceptional sentence if they are significantly more serious than in the usual case.'" Id. at 222-23, 834 P.2d 664 (quoting Tunell, 51 Wash.App. at 279, 753 P.2d 543). We have since disapproved of this language "to the extent that [it] suggests that an exceptional sentence can be imposed merely because of the severity of the injury, where this is [already] an element of the crime." Cardenas, 129 Wash.2d at 7, 914 P.2d 57.[3]
¶ 31 A clearer statement of the law is found in Bourgeois. There, the Court of Appeals explained that the extent of a victim's injuries cannot support an exceptional sentence if that factor was considered by the legislature "in defining, and setting the standard range for, the crime of conviction." *152 Bourgeois, 72 Wash.App. at 662, 866 P.2d 43 (emphasis added). The severity of a victim's injuries thus can justify an exceptional sentence if that aggravating factor was not considered by the legislature in either (i) defining the crime or (ii) setting its standard range sentence. In Bourgeois, the court found that the victims' injuriesgunshot wounds destroyed one victim's spleen and half of his pancreas, and necessitated a colostomy "unambiguously" exemplified "what the Legislature defined as an intentional assault inflicting great bodily injury." Id. at 662, 866 P.2d 43. In other words, the legislature had considered injuries like the victim's in defining and setting the standard range for first degree assault. This being the case, the court invalidated the aggravating factor. Id. at 664, 866 P.2d 43.
¶ 32 Although the reasoning underlying George has been called into question, see Cardenas, 129 Wash.2d at 7, 914 P.2d 57, it cannot be said that the aforementioned cases stand for the proposition that, categorically, no injury can possibly exceed the level of harm encompassed by "great bodily harm" in the context of first degree assault, and that RCW 9.94A.535(3)(y) may never apply. Bourgeois merely found that the injuries in that case did not exceed the statutory definition of great bodily harm; George and the cases discussing second degree and vehicular assault were likewise fact-specific.[4]
¶ 33 The majority's assertion that "the aggravating factor of serious injury did not apply to first degree assault" under the common law prior to the codification of RCW 9.94A.535(3)(y) is mistaken. Majority at 149. The seriousness of a victim's injuries did apply as an aggravating factor to first degree assault prior to codification: it could support an enhanced sentence so long as the legislature did not consider the seriousness of the injuries inflicted in a particular case when it (i) defined first degree assault or (ii) established the standard range sentence for that crime. No case has squarely held otherwiseand I note that it is the province of the legislature, not the courts, to define crimes and sentences.
¶ 34 Under the correct standard, I would recognize that the legislature did not consider injuries as severe as Goodwin's in defining or setting the standard range sentence for first degree assault. Rather, Goodwin's injuries substantially exceed the level of harm "great bodily harm," RCW 9A.36.011(a) and (c)that the legislature contemplated would be encompassed by that crime. The severity of Goodwin's injuries therefore justifies the exceptional sentence that Stubbs received under RCW 9.94A.535(3)(y), and on this basis I would affirm the Court of Appeals.
¶ 35 In so ruling, I would also affirm the Court of Appeals' rejection of Stubbs's vagueness challenge to RCW 9.94A.535(3)(y). The phrase "substantially exceeds" is not so imprecise that it carries no commonsense meaning. Suppl. Br. of Pet'r at 16. The term "substantial" indicates that the level of harm suffered by the victim must be significantly greater than that defined as "great bodily harm" in the statute. Cf. State v. Worrell, 111 Wash.2d 537, 544, 761 P.2d 56 (1988) ("`interferes substantially with his liberty'" in kidnapping statute not unconstitutionally vague (emphasis added) (quoting RCW 9A.40.010(1))); State v. Saunders, 132 *153 Wash.App. 592, 599, 132 P.3d 743 (2006) ("substantial pain" in third degree assault statute not unconstitutionally vague (emphasis added)). The statutory definition of "great bodily harm," see RCW 9A.04.110(4)(c) offers a sufficiently objective baseline for jurors to compare to a particular victim's injuries and apply the "substantially exceeds" standard of the aggravating factor. Such a jury finding is proper, and ought not be disturbed by an appellate court. RCW 9.94A.535(3)(y) also apprises defendants that inflicting a significantly more serious bodily injury may result in an exceptional sentence; the statute is not unconstitutionally vague, and I would affirm the Court of Appeals on this issue as well. Because the majority fails to address this matter and erroneously holds that RCW 9.94A.535(3)(y) does not apply to first degree assault as a matter of law, thereby overturning a proper jury finding authorized by legislative enactment, I dissent.
NOTES
[1] RCW 9A.36.011 provides in part: "(1) A person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm:

"(a) Assaults another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death; or
". . . .
"(c) Assaults another and inflicts great bodily harm."
[2] RCW 9.94A.535 provides in part: "The court may impose a sentence outside the standard sentence range for an offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence. Facts supporting aggravated sentences, other than the fact of a prior conviction, shall be determined pursuant to the provisions of RCW 9.94A.537.

". . . .
"(3) Aggravating CircumstancesConsidered by a JuryImposed by the Court
"Except for the circumstances listed in subsection (2) of this section, the following circumstances are an exclusive list of factors that can support a sentence above the standard range. . . .
". . . .
"(y) The victim's injuries substantially exceed the level of bodily harm necessary to satisfy the elements of the offense. . . ."
[3] The standard range is 186-240 months, including 24 months for the deadly weapon finding. See CP at 111. The standard range for second degree murder is 199-299 months.
[4] At the time we decided Nordby, the statute was codified as RCW 9.94A.210. It was subsequently recodified as RCW 9.94A.585 by Laws of 2001, chapter 10, section 6.
[5] In Blakely, the United States Supreme Court held that a criminal defendant has a Sixth Amendment right to have a jury determine beyond a reasonable doubt any fact, other than the fact of a prior conviction, used to impose a sentence above the standard range. Blakely, 542 U.S. at 305, 124 S.Ct. 2531. Consequently, the legislature amended the SRA to provide that "facts supporting aggravating circumstances shall be proved to a jury beyond a reasonable doubt." LAWS OF 2005, ch. 68, § 4.
[6] The elements of the offense for purposes of the SRA are determined by the crime charged. State v. Grewe, 117 Wash.2d 211, 214, 813 P.2d 1238 (1991).
[7] LAWS OF 2001, chapter 300, section 1 replaced the requirement of "serious bodily injury" with "substantial bodily harm," as defined by RCW 9A.p4.110.
[8] The three levels of bodily harm, in ascending order, are: (a) "`bodily harm,'" defined as "physical pain or injury, illness, or an impairment of physical condition"; (b) "`[s]ubstantial bodily harm,'" defined as "bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part"; and (c) "`[g]reat bodily harm,'" defined as "bodily injury which creates a probability of death, or which causes significant serious permanent disfigurement, or which causes a significant permanent loss or impairment of the function of any bodily part or organ." RCW 9A.04.110(4).
[9] According to Dr. Moise, Goodwin's life expectancy has been shortened by 17 years.
[10] Notably, the State conceded at oral argument that rendering a person paraplegic "certainly" fits the definition. Wash. Supreme Court oral argument, State v. Stubbs, No. 81650-6 (Mar. 9, 2010), at 20 min., 46 sec., audio recording by TVW, Washington State's Public Affairs Network, available at http://www.tvw.org.
[1] That the legislature has not defined a level of harm greater than "`great bodily harm'" does not mean that such harm does not exist. Majority at 148. It does, and Goodwin suffered it.
[2] As the Washington Association of Prosecuting Attorneys (WAPA) observes, this element would be satisfied even if Goodwin had fully recovered from the stab wound or if Goodwin had only lost a finger or a toe as a result of the assault. Br. of Amicus WAPA at 7-8. Although we do not compare a victim's injuries to the minimum level of harm that could have led to the same conviction in applying the serious injury aggravator, State v. Bourgeois, 72 Wash.App. 650, 662, 866 P.2d 43 (1994), Goodwin's injuries obviously surpass this level of harm.
[3] This disapproval was expressed in dicta, however, and did not overrule George because the discussion was not necessary to the resolution of the vehicular assault issue in Cardenas.
[4] See Cardenas, 129 Wash.2d at 6-7, 914 P.2d 57 ("Michel's injuries, while severe, are evidently the type of injuries envisioned by the Legislature in setting the standard range [for vehicular assault]. Consequently, the severity of injuries suffered cannot justify an exceptional sentence."); Armstrong, 106 Wash.2d at 550-51, 723 P.2d 1111 ("The fact that Armstrong inflicted serious first and second degree burns upon the baby merely brings Armstrong's crime within the definition of second degree assault. . . . Hence, the nature of the injuries inflicted were already accounted for in determining the presumptive sentence range for second degree assault; they cannot be counted a second time to justify an exceptional sentence."); Nordby, 106 Wash.2d at 519, 723 P.2d 1117 ("While the victim's injuries here were severe, this factor was already considered in setting the presumptive sentence range for vehicular assault. It cannot, therefore, be a basis for a sentence outside the presumptive range."); see also State v. Cowen, 87 Wash.App. 45, 56, 939 P.2d 1249 (1997) (affirming the imposition of an exceptional sentence for first degree attempted homicide where the victim's multiple gunshot wounds caused him to "remain forever paralyzed, in extreme pain, and unable to perform basic bodily functions" because "[n]o authority indicates that the Legislature necessarily contemplated such injuries in determining the standard range").