2015 JUN 22 AM 9: 55



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| | ) | |
| Respondent, | ) | No. 71620-4-I |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| HUGH EDWIN WILCOX, | ) | |
| | ) | |
| Appellant. | ) | FILED: June 22, 2015 |
| | ) | |

DWYER, J. — Hugh Wilcox was charged with one count of assault in the first degree and one count of assault in the second degree with the aggravating circumstance that the victim's injuries substantially exceeded the level of bodily harm necessary to satisfy the elements of the offense. By jury verdict, Wilcox was acquitted of assault in the first degree but convicted of assault in the second degree. The jury also found the aggravating circumstance proved. On appeal, Wilcox contends that the aggravating circumstance, in particular the requirement that the jury determine whether the victim's injuries *substantially exceeded* the harm necessary to satisfy the elements of the offense, was unconstitutionally vague. He also contends that the State was required to prove that not only the victim's injuries, but also the defendant's conduct, exceeded the statutory requirement. Finding no error, we affirm.

I

Wilcox and Stephen Jennings were roommates in a house that they also shared with Michael Munoz, Kara Anderson, and Wilcox's wife, Cheryl.

On November 6, 2012, Wilcox assaulted Jennings, causing him permanent, life-threatening brain injury. Prior to the assault, Jennings got into a verbal argument with Wilcox and Cheryl. Jennings testified that he remembered Wilcox hitting him twice on the head, and a third time somewhere else. Although Jennings' memory of the assault was limited, he remembered falling from the couch on which he was seated to the floor and experiencing his right side being paralyzed.

According to Cheryl, when the argument started, Jennings was on the couch. She left the room to go to the bathroom. When she returned after a "few seconds," Jennings was sitting on the floor. He was holding his head and "acting funny." Cheryl did not see how Jennings ended up on the floor, nor did she see Wilcox hit Jennings.

Anderson witnessed part of the altercation between Wilcox and Jennings. She saw Wilcox yell at Jennings and push him on his forehead with the palm of his hand. Anderson then left the room. While she was gone, she did not hear any loud noises, but when she came back into the room, she saw Jennings on the floor with his arms around Wilcox, obviously injured.

Munoz arrived home after the assault and found Jennings on the floor, holding his head and looking dazed. He and Wilcox picked up Jennings, who could no longer stand on his own, and carried him to Munoz's truck. Although they "flew down" to Northwest Hospital, Jennings could not walk or speak by the time they arrived. An emergency healthcare provider found Jennings slumped

over in a wheelchair in the hospital lobby without a wallet, identification, or anyone to explain what had happened.

Wilcox later admitted to police that he had intervened in an argument between Cheryl and Jennings and that he had cracked Jennings' skull in the process. Wilcox acknowledged that he had held Jennings down by his head and that he heard it "crunch." Additionally, Wilcox told a friend that he put Jennings' head "down with force" and that "it sounded like a chicken bone crunching."

Northwest Hospital staff transferred Jennings to Harborview Medical Center for emergency brain surgery upon determining that he had suffered a massive brain bleed and a severe compressed skull fracture. Jennings' skull had been indented and shattered into multiple "jagged little pieces," causing a large and potentially fatal amount of bleeding in his brain. Additionally, the midline of Jennings' brain had shifted 11 millimeters, a significant amount.

At Harborview, doctors removed part of Jennings' skull and a blood clot in an effort to relieve the pressure on his brain. Following the surgery, Jennings required a nearly four-month stay at Harborview in the intensive care and in-patient rehabilitation units. Jennings was discharged to a nursing facility.

By the time of trial, Jennings was still living in the nursing facility, paralyzed on the right side of his body, forced to use a wheelchair, and unable to communicate easily. Jennings' treating physician testified that he is not expected to make a full recovery.

The State charged Wilcox with one count of assault in the first degree - domestic violence and, in the alternative, one count of assault in the second

degree - domestic violence. The second degree assault charge included the aggravating circumstance that the victim's injuries substantially exceeded the level of bodily injury necessary to satisfy the elements of the offense.

Prior to closing arguments, Wilcox proposed that the court amend the aggravating circumstance instruction to state that the prosecutor was required to prove that he intended to cause Jennings great bodily harm. Wilcox argued that the proposed intent element was required under case law, even though it was not included in the pattern instruction. The State opposed the amendment, contending that neither the statute nor case law required a jury finding of intent. The trial court declined to do so.

The jury acquitted Wilcox of first degree assault but found him guilty of second degree assault and found both the domestic violence allegation and the aggravating circumstance proved. The trial court imposed an exceptional sentence of 73 months of incarceration.

II

Wilcox argues that the trial court erred by imposing an exceptional sentence based on the "substantially exceeds" aggravating circumstance. This is so, he asserts, because the charged circumstance is unconstitutionally vague under the due process clause. Because void for vagueness challenges do not apply to sentencing aggravators, we disagree.

Under the due process clause, a statute is void for vagueness if it either (1) fails to define the offense with sufficient precision that a person of ordinary intelligence can understand it, or (2) it does not provide standards sufficiently

specific to prevent arbitrary enforcement. State v. Eckblad, 152 Wn.2d 515, 518, 98 P.3d 1184 (2004). Both prongs of the vagueness doctrine focus on laws that proscribe or mandate conduct. State v. Baldwin, 150 Wn.2d 448, 458, 78 P.3d 1005 (2003).

Our Supreme Court has held that aggravating circumstances are not subject to vagueness challenges under the due process clause. Baldwin, 150 Wn.2d at 459.

> The sentencing guideline statutes challenged in this case do not define conduct nor do they allow for arbitrary arrest and criminal prosecution by the State. [United States v. ]Wivell, 893 F.2d [156,] 160 [(8th Cir. 1990)]. Sentencing guidelines do not inform the public of the penalties attached to criminal conduct nor do they vary the statutory maximum and minimum penalties assigned to illegal conduct by the legislature. A citizen reading the guideline statutes will not be forced to guess at the potential consequences that might befall one who engages in prohibited conduct because the guidelines do not set penalties. Thus, the due process considerations that underlie the void-for-vagueness doctrine have no application in the context of sentencing guidelines.

Baldwin, 150 Wn.2d at 459. Further, the guidelines do not create a "constitutionally protectable liberty interest" because they do not require that a specific sentence be imposed. Baldwin, 150 Wn.2d at 461.

Wilcox does not acknowledge Baldwin, much less argue that it does not constitute controlling authority. Instead, he argues that a due process vagueness challenge is possible in light of Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

Blakely provides for no such thing. Blakely concerns itself with the Sixth Amendment jury trial right. As applied to sentencing facts, Blakely discusses

*who* decides the factual contest (the judge or the jury). It does not concern itself with *what* is decided.

Wilcox has not provided any cogent legal argument suggesting how Blakely, a decision firmly anchored in the Sixth Amendment right to a jury trial, has modified the Fourteenth Amendment due process vagueness analysis articulated in Baldwin. Baldwin controls. Wilcox's vagueness challenge is unavailing.[1]

III

Wilcox next contends that insufficient evidence supports the jury's finding regarding the "substantially exceeds" aggravating circumstance. This is so, he asserts, because the State was required to prove not only that Jennings' injury—but also his own conduct—exceeded the level necessary to establish assault in the second degree. Because the State was not required to prove excessive conduct, we disagree.

Wilcox's contention that the State was required to prove that the conduct giving rise to the harm exceeded the level necessary to satisfy the elements of the offense is contrary to the plain language of the aggravating circumstance statute. RCW 9.94A.535(3)(y) provides that the trial court may impose an exceptional sentence if the jury finds beyond a reasonable doubt that *"[t]he*

---

[1] Wilcox also relies on Eighth Amendment death penalty cases to support his vagueness challenge. However, he fails to cite any authority holding that a vagueness challenge under the Eighth Amendment applies outside the death penalty context. Several courts, including this court, have held that it does not. See State v. E.A.J., 116 Wn. App. 777, 792, 67 P.3d 518 (2003) (rejecting Eighth Amendment vagueness challenge to juvenile manifest injustice); Holman v. Page, 95 F.3d 481, 487 (7th Cir. 1996) (holding that Eighth Amendment vagueness inquiry does not apply to non-capital cases), overruled on other grounds, Owens v. United States, 387 F.3d 607 (7th Cir. 2004).

*victim's injuries* substantially exceed the level of bodily harm necessary to satisfy the elements of the offense." (Emphasis added.) As written, the statute focuses solely on the seriousness of the victim's injuries and makes no reference to the defendant's intent or conduct.

The Washington Supreme Court has interpreted this provision in accordance with its plain language. In State v. Stubbs, 170 Wn.2d 117, 130-31, 240 P.3d 143 (2010), our Supreme Court recognized that the "substantially exceeds" aggravating circumstance set forth in RCW 9.94A.535(3)(y) codified the "serious injury" aggravating circumstance at common law. The court noted that the aggravating circumstance arose out of case law that had established that "'*particularly severe injuries* may be used to justify an exceptional sentence,' but only if they are 'greater than that contemplated by the Legislature in setting the standard range.'" Stubbs, 170 Wn.2d at 124 (emphasis added) (quoting State v. Cardenas, 129 Wn.2d 1, 6, 914 P.2d 57 (1996)). The court acknowledged that, by directing the trier of fact to measure the victim's actual injuries against the minimum injury that would satisfy the elements of the offense, the statute created a "somewhat different test" than previously articulated in the case law. Stubbs, 170 Wn.2d at 128-29. Nevertheless, the court applied the statute consistent with its plain language, focusing on the seriousness of the victim's injuries and not on the defendant's conduct.

Subsequent decisions of the Supreme Court analyzing the "substantially exceeds" aggravating circumstance have also evaluated the seriousness of the victim's injuries without consideration of the defendant's conduct causing them.

See State v. Duncalf, 177 Wn.2d 289, 297, 300 P.3d 352 (2013) (holding that the victim's likely permanent impairment of his lower jaw substantially exceeded the level of harm required to prove second degree assault); State v. Pappas, 176 Wn.2d 188, 193, 289 P.3d 634 (2012) (holding that the victim's permanent and severe brain injury substantially exceeded the level of harm required to prove vehicular assault).

The State was not required to offer proof regarding Wilcox's conduct or intent in order to establish the "substantially exceeds" aggravating circumstance. Moreover, there is no dispute that sufficient evidence was presented regarding Jennings' devastating injuries. Therefore, sufficient evidence supports the jury's finding that the aggravating circumstance was proved.[2]

Affirmed.

_Dwyer, J._

We concur:

_Spearman, C.J._                _Leach, J._

---

[2] In a brief statement of additional grounds, Wilcox raises three additional issues—(1) that "[t]he jurors were made aware . . . that [he] was incarcerated," (2) that "[he] was not read [his] Miranda rights properly," and (3) that he had "asked for an attorney several times." Wilcox does not provide any citations to the record or cite any authority in support of these claims. Therefore, he has not established an entitlement to relief. See RAP 10.10(c).